# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## KA 07-1058


**STATE OF LOUISIANA**

**VERSUS**

**CHARLES EDWARDS, JR.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. C11583
HONORABLE DEE A. HAWTHORNE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## JOHN D. SAUNDERS
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, John D. Saunders, and Glenn B. Gremillion, Judges.

**AFFIRMED.**


**Van Hardin Kyzar**
**District Attorney**
**10th Judicial District Court**
**P. O. Box 838**
**Natchitoches, LA 71458-0838**
**(318) 357-2214**
**Counsel for Plaintiff:**
**State of Louisiana**


**Annette Fuller Roach**
**Louisiana Appellate Project**
**P. O. Box 1747**
**Lake Charles, LA 70602-1747**
**(337) 436-2900**
**Counsel for Defendant:**
**Charles Edwards, Jr.**

**Billy Joseph Harrington**
**Assistant District Attorney**
**P.O. Box 838**
**Natchitoches, LA 71458-0838**
**(318) 357-2214**
**Counsel for Plaintiff:**
**State of Louisiana**

**SAUNDERS, Judge:**

Charles Edward, Jr., was indicted on August 30, 2006, for second degree murder, a violation of La.R.S. 14:30.1. A jury trial commenced on February 5, 2007. However, on February 6, 2007, Defendant pled guilty to the amended offense of manslaughter, a violation of La.R.S. 14:31. The trial court ordered a pre-sentence investigation report, and following a hearing held on May 21, 2007, sentenced Defendant to thirty years imprisonment at hard labor. Defendant filed a "Motion to Reconsider Sentence," which was heard on July 11, 2007, and denied in open court.

Defendant has perfected a timely appeal. He asserts the trial court failed to take adequate consideration of mitigating factors and that the sentence is constitutionally excessive under the circumstances of this case.

For the following reasons, we affirm Defendant's sentence of thirty years at hard labor.

**FACTS:**

Because Defendant pled guilty to the crime of manslaughter, the facts are as were given to establish a basis for the offense:

> On July 16, 2006 the defendant was at a club in Natchitoches, Illuminations. He was with an individual named Harvey Williams. There was an altercation involving Mr. Williams and Mr. Ronnie Brimsey who was the victim in this matter. The altercation was broken up. Mr. Williams was taken out the back door by security officers. Mr. Brimsey was taken out the front door. Once outside. . . .Mr. Edwards had already gone outside. Mr. Edwards obtained a gun, a five shot .38 caliber revolver. He approached the victim, Ronnie Brimsey and shot at Mr. Brimsey five times with two of the bullets striking Mr. Brimsey who later died at the Natchitoches Parish Hospital.

**ERRORS PATENT:**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed this court for errors patent on the face of the record. After reviewing the record, we find no errors patent.

**ASSIGNMENT OF ERROR NUMBER 1:**

Defendant argues that the trial court did not give proper consideration to the mitigating factors when fashioning the sentence for Defendant: "Specifically the prior altercations between the two men, appellant's work history, and his children."

Several witnesses testified on Defendant's behalf at the sentencing hearing.

Jacob Nash, a longtime friend of Defendant, testified he was with Defendant on the night of the shooting at Club Illumination. He stated that he and Defendant arrived at the club about 11:00 p.m. He parked behind the club and stayed in his vehicle while Defendant went inside. Shortly thereafter, Defendant came out of the club and asked Nash to walk around in front of the club with him. Nash testified that Defendant said something about "somebody gonna get beat up." He stated he had a gun in his possession, a ".38 special," and that he gave the gun to Defendant. As they walked around the corner of the club, Nash testified that he saw the victim take a gun out of his car. At this point, Defendant pulled the gun out of his pocket and shot the victim. He testified he did not give the police a statement the night of the incident because everyone was told to leave the scene. He further testified he had not come forward with this information prior to the sentencing hearing because he had prior convictions and he was not supposed to be in possession of a firearm.

Nash described an incident that happened about a month earlier when he and Defendant had just driven up to a convenience store, Shop-Rite, and the victim drove into the parking lot behind them. The victim got an AK47 machine gun out of the trunk of his car, got back into his car, and stared at them for a while with the machine gun across his lap. He characterized Defendant as being fearful of the victim.

2

Kerlina Watson, Defendant's fiancee, testified she was not at the club that night, but told about an incident when she was outside of her home and the victim drove past waving a gun. She stated that she was aware of animosity between Defendant and the victim.

Kenneth Ratliff, a lifelong friend of Defendant, said he was with Defendant and Nash when the victim showed up at Shop-Rite and stared them down with a machine gun on his lap. He stated Defendant was not the type to back down if someone "messed" with him.

Finally, Thomas Stoker, a private investigator hired by Defendant's family, testified that although no one would say it outright, the word on the street was if anyone tried to help Defendant in this matter, they would be hurt. He stated he had heard that the two men were antagonistic, that the victim was known for always carrying a gun and Defendant was known for not ever carrying a gun.

The State put Stan Williams, a detective with the Natchitoches City Police Department, on the stand. He was the lead investigator in this case. According to the detective, there was no gun found on or around the victim, or in his vehicle. He recounted statements made by two eyewitnesses, one was the girl who had been with the victim at the club, and the other a witness who was standing close to the victim and could see him clearly. Both eyewitnesses had stated that the victim did not have a gun when Defendant shot him. The detective said he had told several people, including Defendant's mother, that if there was anyone who had knowledge that the victim had a gun, he would be glad to go and talk to them.

Finally, Jeannetta Brimsey, the victim's sister, testified. She said she was sitting in the back of the club with her boyfriend the night her brother was shot. She

3

stated she saw Defendant come out of the back door of the club and go to Nash's car and get a gun. The two men then walked around to the front of the club. She said there were shots, and Defendant ran into the bushes, where eventually the police found him. She told of an incident a few years prior to the night at the club when Defendant and Kenneth Ratliff were involved in a shootout with the victim. She admitted she never made a statement to the police regarding what she saw because no one asked her.

The trial judge then gave her ruling. She stated that she had reviewed the pre-sentence investigation report and made the report, along with the police reports and statements of several witnesses, a part of the record. She noted there was testimony the victim had a gun and there was testimony the victim did not have a gun. However, she was dubious as to Nash's testimony because Nash waited for so long to come forward with the information. She noted that Defendant was initially charged with second degree murder, but had the benefit of pleading to a lesser offense which could result in a much reduced sentence. She noted it was a crime of violence committed with the use of a dangerous weapon, and that it was Defendant's second conviction for a violent crime. Defendant had deliberately sought out a weapon, indicating a plan. Further, Defendant fired five shots into an area where there were other people close around, thereby putting others at serious risk. She then sentenced Defendant to thirty years at hard labor.

Defendant asserts the trial court failed to take into consideration several mitigating factors including that Defendant, a youthful offender, had lived a law-abiding life for a substantial period of time prior to the shooting, that he accepted responsibility for his act by pleading guilty, that he was gainfully employed, and that

4

he had children.  Thus, the sentence made no meaningful contribution to acceptable penal goals.

Defendant filed a motion to reconsider the sentence and a hearing was held on the motion.  At the hearing, Defendant's mother, Virgie Sue Green, testified that Defendant, who was twenty-four at the time of the hearing,  had dropped out of high school because he was bullied every day.  She said that about six months before the shooting, the victim had "come to my house and I got a twelve year old, and pulled a gun on him and twelve others lifting weights on my front porch."  Explaining Defendant's prior conviction for second degree battery, she stated that "[a] boy had pulled a gun on him, he hit him and ran."  Defendant was convicted of the battery because the boy's mother had called and said that she was dropping the charge, so they did not go to court and the conviction was entered against Defendant in his absence.  She further testified that Defendant had a steady employment history.  He had worked at Pilgrim's Pride, but he was allergic to the chemicals--"He has sensitive skin"--and Wal-Mart, "until his baby mom, like I said before put two his tires on flat twice."  She further stated after his job at Wal-Mart terminated, he did not work, but helped to take care of his ill grandmother.

The trial court denied Defendant's motion to reconsider the sentence, stating that she did consider there was animosity between the two men, the fact that he was someone's child, and a father, and "I actually went over the entire list of the sentencing guidelines and carefully considered them."  The trial court went on to say:

> Our civilization does not allow us to resolve these kinds of disputes by pulling a gun out of your belt and shooting somebody. That's simply not allowed. We can't do that. Even if you're afraid of that person or whatever but there was [n]o imminent danger to this man in this particular case. There was no imminent danger to Mr. Edwards at that point under any of the facts situations that anybody has described to this

5

court at any of these hearings. He could have gone back into his car and gone home. I have considered the fact that he was worked. I'm not clear that his work history was as solid as you have indicated today. But that still can't be the decisive point. The decisive point is that he killed a man.

The trial court does not have to list each and every factor set forth in La.Code Crim.P. art. 894.1. However, the record before this court must indicate that the trial court took adequate notice of both aggravating and mitigating factors set forth in Article 894.1. *State v. Morrison,* 99-1342 (La.App. 3 Cir. 3/1/00), 758 So.2d 283. We find that the record before this court shows the trial court took adequate consideration of the sentencing guidelines when it considered a sentence appropriate to the case before it.

## ASSIGNMENT OF ERROR NUMBER 2:

Defendant argues that not only did the trial court not give adequate weight to the mitigating factor in this case, but it placed too much emphasis on the aggravating factors, particularly that the offense involved a killing. Defendant asserts the facts of the case support a sentence in the low to mid-range, rather than a sentence in the upper tier of the maximum sentence allowed by law. Defendant argues his sentence is constitutionally excessive under the circumstances of his case.

Louisiana Revised Statutes 14:31, provides for a range of imprisonment of up to forty years. Defendant was sentenced to thirty years imprisonment.

This court has set forth the standard for reviewing a sentence for excessiveness:

The Eighth Amendment to the United States Constitution and La. Const. art. I, § 20 prohibit the imposition of cruel or excessive punishment. "[T]he excessiveness of a sentence becomes a question of law reviewable under the appellate jurisdiction of this court." *State v. Dorthey*, 623 So.2d 1276, 1280 (La.1993) (quoting *State v. Sepulvado*, 367 So.2d 762, 764 (La.1979)). Still, the trial court is given wide discretion in imposing a sentence, and, absent a manifest abuse of that discretion, we will not deem as excessive a sentence imposed within

6

statutory limits. *State v. Pyke*, 95-919 (La.App. 3 Cir. 3/6/96), 670 So.2d 713. However, "[m]aximum sentences are reserved for the most serious violations and the worst offenders." *State v. Farhood*, 02-490, p. 11 (La.App. 5 Cir. 3/25/03), 844 So.2d 217, 225. The only relevant question for us to consider on review is not whether another sentence would be more appropriate, but whether the trial court abused its broad discretion in sentencing a defendant. *State v. Cook,* 95-2784 (La.5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Whatley*, 03-1275 (La.App. 3 Cir. 3/3/04), 867 So.2d 958 (alteration in original).

Moreover, "[w]here a defendant has pled guilty to an offense which does not adequately describe his conduct or has received a significant reduction in potential exposure to confinement through a plea bargain, the trial court has great discretion in imposing even the maximum sentence possible for the pled offense." *State v. Pugh,* 40,287, p. 2 (La.App. 2 Cir. 11/2/05), 914 So.2d 1183, 1185. Finally, three factors may be considered when reviewing a trial court's sentencing discretion: 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts. *State v. Jones,* 05-735 (La.App. 5 Cir. 2/27/06), 924 So.2d 1113, *writ denied*, 04-151 (La. 10/26/07), 966 So.2d 567.

Defendant was initially charged with second degree murder, which is the intentional killing of another human being, or the intentional infliction of great bodily harm which results in death. On the morning of trial, Defendant pled guilty to the amended offense of manslaughter. In support of a lesser sentence than the sentence imposed by the trial court, Defendant argues he had been fearful of the victim because the victim routinely carried a gun and routinely threatened him. However, we note that at the guilty plea hearing, the facts given to the court to act as a basis for the

7

guilty plea indicated that on the night the victim was shot, the confrontation was not between Defendant and the victim, but a Harvey Williams and the victim.

While it is true, as suggested in Defendant's brief, that the range of punishment for the offense of manslaughter takes into consideration that a death occurred, we find that the offense to which Defendant plead guilty does not adequately describe his conduct. There was no testimony at the sentencing hearing that Defendant had been harassed by the victim the night of the shooting. In fact, the basis for the plea was that when the victim was taken out the front door after a confrontation with another person, Defendant left out the back door of the club, asked for a gun, put it into his pocket, and walked around the building to where he knew the victim would be. At the guilty plea hearing, Defendant agreed with this recitation of these facts. As mentioned by the trial court, Defendant could have got into his friend's truck and left the club peacefully. Moreover, there was testimony the victim did not have a gun in his possession at the time. Defendant was facing a second degree murder charge, and the facts as stated above could have very likely led to the conviction as charged, and Defendant would have received the mandatory sentence of life imprisonment. Instead, Defendant pled guilty to the lesser charge of manslaughter, and thus had the opportunity to present mitigating evidence in an attempt to further reduce his sentence.

While there was testimony Defendant had been employed, as noted by the trial court, the record was not very clear as to his employment. Defendant's mother testified at the motion for reconsideration, but was vague as to the duration of his various employments, and indicated he had not been employed for some time prior to the shooting. Furthermore, the only testimony regarding Defendant's family

8

relationship consisted of the statement made by Defendant's mother that "his baby mom. . . .put two of his tires on flat twice."

Moreover, we find that a sentence in the range of thirty years for the offense of manslaughter is not an uncommon sentence when compared to other cases of similar factual scenarios:

In *Morrison*, 758 So.2d 283, the accused was charged with second degree murder and pled guilty to manslaughter. The accused and the victim had been at a late night party and were drinking and an argument ensued, following which the accused stabbed the victim. The State recommended a sentence of twenty-six years, but the trial court sentenced him to thirty-five years. This court affirmed the sentence, noting that Morrison benefitted greatly from the plea agreement.

In *State v. King,* 00-1434 (La.App. 5 Cir. 5/16/01), 788 So.2d 589, *writ denied*, 01-2456 (la. 9/20/02), 825 So.2d 1157, the fifth circuit affirmed a sentence of twenty-five years. The accused was charged with second degree murder after he had a fight with the victim and shot him with a rifle because the victim had stolen money from him. According to King, the victim "had victimized him in the past." *Id.* at 594. While he had complained to the police, nothing was ever done. King had no prior history of criminal activity. Taking King's relationship with the victim and his lack of a prior felony record, the fifth circuit did not find the sentence was such that shocked its sense of justice.

The accused in *State v. Jefferson,* 02-1159 (La.App. 4 Cir. 12/4/02), 834 So.2d 572, was convicted of manslaughter by a jury and sentenced to twenty-five years imprisonment. After drinking and ingesting cocaine, he and the victim, who had become very drunk, and another friend of the victim's, went to the victim's

9

apartment. He testified the victim proceeded to pick a fight with him, cursing at him in such a way that frightened him. He stated he left the room and asked for a ride home from one of the victim's roommates. After he returned to the living room, the victim began hitting him and he saw the victim's friend reach under a sofa and grab something that he thought was a gun. Jefferson, who had no prior criminal history, pulled out a gun and shot the victim and the friend. The victim died, the friend had only superficial wounds. The fourth circuit affirmed the sentence.

In light of the above testimony and jurisprudence, we cannot say the sentence of thirty years imprisonment for the offense of manslaughter is such that would shock this court's sense of justice. The record indicates the trial court carefully considered both the mitigating and aggravating factors and fashioned a sentence appropriate to the circumstances of the case. The trial court did not abuse its considerable discretion when imposing the sentence.

## CONCLUSION:

We affirm Defendant's sentence.

**AFFIRMED.**

10