Judgment rendered November 20, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,926-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                  Appellee

versus

JEREMY SHARAN WILLIAMS          Appellant

* * * * *

Appealed from the
Second Judicial District Court for the
Parish of Claiborne, Louisiana
Trial Court No. 34,238

Honorable William R. "Rick" Warren, Judge

* * * * *

LOUISIANA APPELLATE PROJECT      Counsel for Appellant
By: Peggy J. Sullivan

DANIEL W. NEWELL                 Counsel for Appellee
District Attorney

DANIEL N. BAYS, JR.
PERRIN NELSON SMITH, JR.
Assistant District Attorneys

* * * * *

Before THOMPSON, ROBINSON, and HUNTER, JJ.

**HUNTER, J.**

Defendant, Jeremy Williams, was charged by bill of information with aggravated assault with a firearm and possession of a firearm by a convicted felon. He was originally sentenced to serve concurrent sentences of 10 years for aggravated assault with a firearm and 20 years for possession of a firearm by a convicted felon. After defendant was adjudicated a habitual offender, the trial court resentenced defendant to serve concurrent sentences of 20 years at hard labor for aggravated assault with a firearm and possession of a firearm by a convicted felon. For the following reasons, we affirm.

## FACTS

On July 23, 2022, Sergeant Stephenson was dispatched to the Pak-A-Bag in Homer, Louisiana, in reference to a report of an unidentified person. Sgt. Stephenson spoke with an employee of the store, Monica Wafer ("Wafer"), and reviewed video surveillance footage from the store. Unfortunately, the video from the store could not be downloaded. However, the suspect was later identified as defendant, Jeremy Williams ("Mr. Williams").

Sgt. Stephenson and Sgt. McNeill arrested Mr. Williams near Greer's BBQ after overhearing someone call Mr. Williams' name. At the time of the arrest, Mr. Williams did not have a gun in his possession. However, Sgt. McNeill retrieved the video from Greer's BBQ which purports to show Mr. Williams behind Greer's BBQ with a gun in his hand.

During trial, multiple witnesses testified Mr. Williams was the man at the Pak-A-Bag parading down the sidewalk with the gun. Witnesses also

testified Mr. Williams was antagonizing a customer, who was identified as Quadray Stephenson. At trial Mr. Williams admitted to his prior felony convictions but denied owning any firearms. Mr. Williams admitted he was at the store and "had words" with his father outside in the parking lot. Mr. Williams also admitted to arguing with Quadray Stephenson about a football game but denied threatening to shoot him.

At the conclusion of a jury trial in this matter, Mr. Williams was found guilty of aggravated assault with a firearm and possession of a firearm by a convicted felon. On July 14, 2023, Mr. Williams was sentenced to 10 years at hard labor for aggravated assault and 20 years for possession of a firearm to be served concurrently. On May 8, 2023, the State amended the bill of information charging Mr. Williams as a habitual felony offender. A hearing was held, and Mr. Williams was adjudicated a third felony in reference to the aggravated assault conviction. Mr. Williams was resentenced to serve concurrent sentences of 20 years at hard labor for aggravated assault with a firearm and possession of a firearm by a convicted felon without the benefit of probation or suspension.

Mr. Williams appeals.

## DISCUSSION

Mr. Williams contends the evidence was insufficient to support his conviction for aggravated assault with a firearm. He argues aggravated assault with a firearm requires placing Quadray Stephenson in fear of receiving a battery while Mr. Williams was armed with a firearm.[1] Mr.

---

[1] La. R.S. 14:36 provides assault is an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery. La. R.S. 14:37 provides aggravated assault is an assault with a dangerous weapon.

Williams also argues Quadray Stephenson testified he did not see a gun when Mr. Williams was inside the store and the two of them were only talking.

With regard to Mr. Williams' conviction for possession of a firearm by a convicted felon, La. R.S. 14:95.1 provides:

> It is unlawful for any person who has been convicted of a crime of violence as defined in R.S. 14:2(b) which is a felony or simple burglary, burglary of a pharmacy, burglary of an inhabited dwelling, unauthorized entry of an inhabited dwelling, felony illegal use of weapons or dangerous instrumentalities, manufacture or possession of a delayed action incendiary device, manufacture or possession of a bomb, or possession of a firearm while in the possession of or during the sale or distribution of a controlled dangerous substance, or any violation of the Uniform Controlled Dangerous Substances Law which is a felony, or any crime which is defined as a sex offense on R.S. 15:541, or any crime defined as an attempt commit one of the above-enumerated offenses under the laws of this state, or who has been convicted under the laws of any other state or of the United States or of any foreign government or country of a crime which, if committed in this state, would be one of the above-enumerated crimes, to possess a firearm or carry a concealed weapon.….

> C. The provisions of this Section prohibiting the possession of firearms and carrying concealed weapons by persons who have been convicted of certain felonies shall not apply to any person who has not been convicted of any felony for a period of ten years from the date of completion of sentence, probation, parole, or suspension of sentence.

The State must prove (1) Mr. Williams possessed a firearm; (2) a previous conviction for an enumerated felony; (3) the ten-year cleansing period has not passed; and (4) the general intent to commit the crime.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307; 99 S. Ct. 2781; 61 L.Ed.2d 560 (1979). A determination of the weight of evidence is a question of fact, resting solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witnesses. A reviewing court may impinge on the fact-finding function of the jury only to the extent necessary to assure the *Jackson* standard of review. It is not the function of an appellate court to assess credibility or reweigh the evidence. *State v. Richardson*, 16-107 (La. App. 3 Cir. 12/28/16), 210 So.3d 340.

In the present case, several witnesses stated Mr. Williams had a gun at the time he approached Quadray Stephenson at the Pak-a-Bag. One witness in particular, Cecily Young, stated, Mr. Williams "pulled out a gun from his pants and proceeded to point and wave the gun around." Cecily Young further stated Mr. Williams "told the young man [later identified as Quadray Stephenson] to meet him at the railroad track and he would 'cap' him." Although Mr. Williams contends Quadray Stephenson was not fearful of their interaction, the testimony of Quadray Stephenson proves fear.

Quadray Stephenson testified in pertinent part:

> **STATE COUNSEL:** All right. Do you remember meeting with Detective Ryan Barnette a few days after this interaction?
>
> **Q. STEPHENSON:** Yes, sir.
>
> **STATE COUNSEL:** Okay. Did you tell him at that time that you were scared?

4

**Q. STEPHENSON:** What? Talking about did I tell him that I was scared?

**STATE COUNSEL:** Yeah.

**Q. STEPHENSON:** Yeah, at the time it was going on; at that time, like, I didn't know.

**STATE COUNSEL:** And that's what I'm asking you now; so, you were scared?

**Q. STEPHENSON:** Scared? You ain't telling me what I was scared of though, sir. You saying Jeremy Williams?

**STATE COUNSEL:** Yes.

**Q. STEPHENSON:** You talking about when he came in the store?

**STATE COUNSEL:** Right. You testified in your recorded interview, a few days after the incident –

**Q. STEPHENSON:** Right.

**STATE COUNSEL:** – you told Detective Barnette that you were scared based upon the encounter with Jeremy Williams.

**Q. STEPHENSON:** Right.

**STATE COUNSEL:** Okay. That's what I'm asking you today. That's correct, right?

**Q. STEPHENSON:** Right.

Thus, based on the above testimony, Mr. Williams placed Quadray Stephenson in fear of receiving a battery.

Accordingly, the State called Sgt. Stephenson with the Homer Police Department. He testified he believed it was a firearm based on the video evidence. The State also offered the testimony of Detective Ryan Barnette with the Claiborne Parish Sheriff's Office. Detective Ryan Barnette testified Quadray Stephenson told him Mr. Williams physically gestured toward the pocket and waistband of his pants and said Mr. Williams was pulling at

5

something, and he believed he might have had a gun. Sgt. Jeffrey McNeill with the Haynesville Police Department testified Mr. Williams appeared to have been carrying a handgun in his right hand based on the Greer's BBQ video. Consequently, additional witnesses testified Mr. Williams had a black gun during the incident with Quadray Stephenson at the Pak-a-Bag.

Thus, the State presented sufficient evidence to support Mr. Williams' conviction for aggravated assault with a firearm and possession of a firearm by a convicted felon. Particularly, numerous witnesses saw Mr. Williams with a firearm waving it in a threatening manner toward Quadray Stephenson at the Pak-a-Bag. The witness's testimony was sufficient enough for the jury to conclude Mr. Williams had the intent to possess a firearm. Additionally, Mr. Williams had been convicted of Simple Robbery, a felony, on April 21, 2015, which is within the ten-year period according to La. R.S. 14:95.1. Consequently, there was sufficient evidence to support Mr. Williams' conviction for possession of a firearm by a convicted felon.

Lastly, Mr. Williams argues his sentence of 20 years for aggravated assault as a habitual offender is unconstitutionally harsh and excessive. Mr. Williams contends although he did have prior convictions, he is not the worst of offenders, and this is not the worst of offenses.

An appellate court uses a two-pronged test to determine whether a sentence is excessive. First, the record must show the trial court was cognizant of the criteria set forth in La. C. Cr. P. art. 894.1. The trial court is not required to list every aggravating or mitigating circumstance so long as the record reflects adequate consideration of the guidelines of the article. Articulation of the factual basis for a sentence is the goal of Article 894.1, not rigid or mechanical compliance with its provisions. *State v. Wells,*

6

54,890 (La. App. 2 Cir. 12/14/22), 352 So. 3d 584, *writ denied*, 23-00037 (La. 9/6/23), 369 So. 3d 1270. The elements which should be considered include the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, the seriousness of the offense, and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981).

The trial court is given wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed should not be set aside as excessive in the absence of a manifest abuse of this discretion. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Jones, supra.* When a defendant has received a reduction in the potential length of incarceration by a plea agreement, the trial court's discretion to impose the maximum sentence is enhanced. *State v. Edwards*, 07-1058 (La. App. 3 Cir. 3/12/08), 979 So. 2d 623.

Additionally, this Court must determine whether the sentence is constitutionally excessive. A sentence can be constitutionally excessive, even when it falls within statutory guidelines, if: (1) the punishment is so grossly disproportionate to the severity of the crime that, when viewed in light of the harm done to society, it shocks the sense of justice; or (2) it serves no purpose other than to needlessly inflict pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166.

The sentencing range for aggravated assault with a firearm shall be fined no more than ten thousand dollars or imprisoned for not more than ten years, with or without hard labor, or both. La. R.S. 14:37.4. Pursuant to La.

R.S. 15:529.1 if a third felony offender would be punishable by imprisonment for any term less than his natural life, then the following sentences apply:

(a) The person shall be sentenced to imprisonment for a determinate term not less than one-half of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction.

(b) If the third felony and the two prior felonies are felonies defined as a crime of violence under R.S. 14:2(B), or a sex offense as defined in R.S. 15:541 when the victim is under the age of eighteen at the time of commission of the offense, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.

In the present case, Mr. Williams is classified as a third felony offender with the sentence ranging from not less than five years and not more than 20 years at hard labor, without benefit of probation, parole, or suspension of sentence. The trial court sentenced Mr. Williams to serve 20 years for aggravated assault as a habitual offender. Prior to the imposition of the sentence, the trial court reviewed the presentence investigation "PSI" report and noted its reliance thereon for the purpose of determining the appropriate sentence in Mr. Williams case.

The trial court referenced Mr. Williams' criminal history of repeating crimes and knowingly creating a risk of death or great bodily harm to the public. The court considered Article 894.1 A (1-3) and found there was an undue risk that during the period of a suspended sentence or probation Mr. Williams would commit another crime. The court noted Mr. Williams started his path of crime at the age of 17, when he committed an attempted armed robbery and pleaded to conspiracy to commit armed robbery. Mr.

8

Williams committed a second felony, an armed robbery, while on parole for the first offense. Regarding the present charge, Mr. Williams committed the crime less than one year after he was released from prison. All the crimes of which Mr. Williams was convicted involved the use of a dangerous weapon.

A sentence violates La. Const. art. I § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. A sentence is considered grossly proportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. *State v. Myrick*, 54,606 (La. App. 2 Cir. 9/21/22), 349 So. 3d 92.

After reviewing the record, we find a 20-year concurrent sentence is merited, considering the violence commenced by Mr. Williams. As outlined above, Mr. Williams has proven himself to commit crimes of violence when released from prison and disregards the harm he has caused to society. Thus, the trial court demonstrated appropriate actions in sentencing Mr. Williams.

## CONCLUSION

For the reasons set forth herein, we affirm defendant's convictions and sentences.

**AFFIRMED.**