Judgment rendered May 22, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,590-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

ELMER PLEASANT, JR.                         Appellant

* * * * *

Appealed from the
Fifth Judicial District Court for the
Parish of Franklin, Louisiana
Trial Court No. 2015-224F

Honorable John Clay Hamilton, Judge

* * * * *

LOUISIANA APPELLATE PROJECT              Counsel for Appellant
By: Peggy J. Sullivan

PENNY WISE DOUCIERE                      Counsel for Appellee
District Attorney

CAROLINE HEMPHILL
AMANDA MICHELE WILKINS
Assistant District Attorneys

* * * * *

Before STONE, THOMPSON, and HUNTER, JJ.

THOMPSON, J.,  concurs  in part and dissents in part with written reasons.

**HUNTER, J.**

Defendant, Elmer Pleasant, Jr., was charged by bill of information with possession of a firearm by a convicted felon and possession of a firearm while in possession of a controlled dangerous substance. The trial court subsequently resentenced defendant to serve consecutive sentences of 20 years at hard labor for possession of a firearm by a convicted felon and seven years at hard labor for illegal possession of a firearm. For the following reasons, we affirm in part defendant's convictions, vacate defendant's sentences, and remand to the trial court for resentencing in accordance with this opinion.

### FACTS

On February 9, 2015, Sheriff Kevin Cobb of the Franklin Parish Sheriff Office alongside his deputies were executing a search warrant when they witnessed defendant frantically fleeing from the residence.[1] During the subsequent search of the residence, deputies discovered marijuana, cocaine, and a pistol. Conveniently, the other occupants informed the officers the gun belonged to the defendant.[2] A few days later, defendant was arrested and charged with possession of a firearm by a convicted felon, possession of Schedule II controlled dangerous substance ("CDS") and marijuana, and illegal carrying of weapons.

On January 6, 2016, subject to the terms of a plea agreement with the State, defendant appeared with counsel and entered guilty pleas to possession of a firearm by a convicted felon and illegal possession of a

---

[1] The residence was also occupied by three other individuals.

[2] The record included an affidavit whereby another person acknowledged possession/control of the firearm. However, there was no further mention of this by the State or Defendant.

weapon. The parties agreed defendant would be sentenced to two ten-year concurrent sentences and as a result the State would waive the right to charge the defendant as a habitual offender. The State agreed to dismiss defendant's previous charge of possession of cocaine, and two prior misdemeanor cases.[3] The Court, utilizing the full knowledge of defendant's prior convictions and pending drug charges, deemed defendant nonviolent and worthy of release on his own recognizance with instructions to return for execution of sentence on May 10, 2016. However, on May 10, 2016, defendant failed to appear.

Defendant remained a fugitive fleeing justice from May 10, 2016, to September 20, 2022. Eventually, defendant was arrested and extradited to Louisiana for sentencing on the pending charges in Franklin Parish.

On February 2, 2023, defendant filed a *pro se* motion to withdraw the guilty plea entered on January 6, 2016. On February 8, 2023, Judge Hamilton[4] denied the motion *without a hearing*, noting defendant had been a fugitive since his 2016 sentencing date. On May 16, 2023, defendant was resentenced to serve 20 years at hard labor for the possession of a firearm by a convicted felon and seven years at hard labor for the illegal possession of a firearm with the sentences to now run *consecutively*. Defendant filed a motion to reconsider sentence which was denied *without a hearing*.

Defendant now appeals.

---

[3] The State did not dismiss the two prior counts of distribution of methamphetamine and one count of distribution of marijuana.

[4] Judge Hamilton replaced Judge Doughty, who ascended to the federal court.

## DISCUSSION

Defendant contends the trial court abused its discretion in denying the motion to withdraw his guilty pleas. According to defendant, he should have been allowed to withdraw his plea because the agreed-upon sentence was withdrawn.

Upon the motion of the defendant and after a contradictory hearing, which may be waived by the State in writing, the Court may permit a plea of guilty to be withdrawn at any time before sentencing.[5] A defendant has no absolute right to withdraw a guilty plea.[6] The discretion to allow the withdrawal of a guilty plea lies with the trial court and such discretion cannot be disturbed unless an abuse or arbitrary exercise of that discretion is shown. *State v. McGarr*, 52,641 (La App. 2 Cir. 4/10/19), 268 So. 3d 1189. In this case, Judge Hamilton denied defendant's motion to withdraw his guilty plea and noted defendant had been absconding since his 2016 imposition date. Defendant now contends in his *pro se* motion the basis of his flight was due to his dissatisfaction with his sentence and plea, his plan to prove his innocence, and his intent to seek suppression of all evidence in his case. Our review of the record reflects defendant did not raise the issue of failure to hold a hearing on the motion to withdraw the guilty plea in the trial court. Thus, defendant has not preserved this issue for appeal. *State v. Satterville*, 53,809 (La. App. 2 Cir. 3/3/21), 315 So. 3d 425; see also **La. C. Cr. P. art. 841.**

Under La. C. Cr. P. art. 556.1, a valid guilty plea must be a voluntary choice by the defendant and not the result of force or threats. La. C. Cr. P.

---

[5] La. C. Cr. P. art. 559

[6] La. C. Cr. P. art. 559.

3

art. 556.1 also provides prior to accepting a guilty plea, the Court must personally inform the defendant of the nature of the charge to which the plea is offered, any mandatory minimum penalty, and the maximum possible penalty. When the record establishes that an accused was informed of and waived his right to a trial by jury, to confront his accusers, and against self-incrimination, the burden shifts to the accused to prove that despite this record, his guilty pleas was involuntary. *State v. Clause,* 2022-545 (La. App. 3 Cir. 1/25/23), 354 So. 3d 1269.

In order to properly exercise its discretion and in order for the appellate court to review the exercise of discretion, the trial court *should* conduct a hearing or inquiry on defendant's motion to withdraw a guilty plea. In determining whether a plea was knowingly, voluntarily, or intelligently entered, the district court can look beyond the *Boykin* colloquy and consider all relevant factors, such as the breach of a plea bargain, inducement, misleading advice of counsel, strength of evidence of actual guilt, or the like. *State v. Clause*, *supra.*

The record indicates the trial court informed defendant of his constitutional rights.

The following colloquy ensued:

> **THE COURT:** … By pleading guilty you'll be giving up the following constitutional rights. You have the right to plead not guilty or maintain your not guilty plea, and you have the right to a speedy and public trial by a jury and to the assistance of an attorney during the trial. You have the right to require the State to meet its burden and to prove every element of your offenses for which you've been charged beyond a reasonable doubt. You have the right to see, hear, confront, and cross-examine, which means to ask questions of all witnesses called to testify against you. You have the right to testify during your trial and to require

the appearance of witnesses and evidence under subpoena to appear and testify on your behalf. You have the privilege against self-incrimination which means you have the right to remain silent both during this guilty plea and during the trial and you cannot be forced to testify against yourself or to plead guilty or present any evidence against yourself. If you chose to remain silent and not testify during your trial this would not be held against you by the Judge or jury hearing your case. If you were found guilty at trial you'd have the right to appeal your conviction and the right to an attorney on appeal. Do you understand these constitutional rights?

**MR. PLEASANT:** Yes, sir.

**THE COURT:** Do you understand that by pleading guilty you waive and give up those rights?

**MR. PLEASANT:** Yes, sir.

**THE COURT**: Do you understand everything I've said so far?

**MR. PLEASANT:** Yes, sir.

**THE COURT:** And do you also understand that since you're entering into a plea agreement as to the exact charge and exact sentence you won't be allowed to appeal or seek review of the length or severity of the sentence?

**MR. PLEASANT:** Yes, sir.

Then, the court asked Ms. Shields (Defense Attorney) whether Mr. Pleasant has been competent and able to discuss the case and cooperate with her through representation. Ms. Shields stated yes and that she advised him of the nature of the charges and his legal and constitutional rights.

**(MR. BARHAM EXPLAINS THE FACTUAL BASIS TO THE COURT.)**

**THE COURT:** … upon the record before me I find that the plea is entered into freely, voluntarily with both an understanding of the nature of the charges and the consequences of the plea including

Mr. Pleasant's understanding of the plea agreement. I also find that each has a factual basis containing all the elements of the crime charged, the plea is therefore accepted and the Court now adjudges you guilty of the offenses charged. And as we had talked about I'm going to set sentencing for May the 10th of 2016. As we discussed, if you come back to Court on May 10th for sentencing I'm going to sentence you just like the plea agreement says.

**MR. PLEASANT:** Yes, sir.

**THE COURT:** But I'm – because since we're going to release you on your own recognizance with the pending charges that are still left, if you don't show up then I'm free to sentence you to any – something higher than that, I could go to twenty years on the possession of a firearm, I could go to – I can't remember what it is, but I could go to – I could go higher than we agreed if you don't – if you don't show up. Do you understand that?

**MR. PLEASANT:** Yes, sir.

Defendant fails to state any facts in the brief which support the assertion his plea was involuntary or unknowingly given. The defendant further fails to allege he was forced, threatened, or coerced by anyone to enter the guilty plea. Our review of the record indicates the defendant entered into the plea agreement voluntarily. Defendant also contends the total sentence of 27 years at hard labor was excessive and is not supported by the facts and circumstances of this case. Defendant asserts the harsh nature of the sentence and the consecutive nature of their imposition resulted in a sentence which is unconstitutionally harsh. I agree.

An appellate court uses a two-pronged test to determine whether a sentence is excessive. First, the record must show the trial court is cognizant of the criteria set forth in La. C. Cr. P. art. 894.1. The trial court is not required to list every aggravating or mitigating circumstance so long as the

6

record reflects adequate consideration of the guidelines of the article. Articulation of the factual basis for a sentence is the goal of Article 894.1, not rigid or mechanical compliance with its provisions. *State v. Wells,* 54,890 (La. App. 2 Cir. 12/14/22), 352 So. 3d 584, *writ denied*, 23-00037 (La. 9/6/23), 369 So. 3d 1270. The elements which should be considered include the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, the seriousness of the offense, and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981).

The trial court is given wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed should not be set aside as excessive in the absence of a manifest abuse of this discretion. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Jones, supra.* When a defendant has received a reduction in the potential length of incarceration by a plea agreement, the trial court's discretion to impose the maximum sentence is enhanced. *State v. Edwards*, 07-1058 (La. App. 3 Cir. 3/12/08), 979 So. 2d 623.

Additionally, this Court must determine whether the sentence is constitutionally excessive. A sentence can be constitutionally excessive, even when it falls within statutory guidelines if: (1) the punishment is so grossly disproportionate to the severity of the crime that, when viewed in light of the harm done to society, it shocks the sense of justice; or (2) it serves no purpose other than to needlessly inflict pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166.

For context, the sentencing range for possession of a firearm by a convicted felon is no less than ten years or more than twenty years at hard labor. The sentencing range for illegal possession of a weapon is no less than five years or more than ten years at hard labor.[7]

In this present case, defendant asserts the 27-year sentence for possession of a firearm by a convicted felon and illegal possession of a weapon is excessive and the imposition of consecutive sentences is inappropriate in this case. Prior to imposition of the sentence, the Court reviewed the presentence investigation (PSI) report and noted its reliance thereon for the purposes of determining the appropriate sentence in defendant's case. It is further noteworthy no additional factors other than the defendant's absconsion served as the basis for a 17-year increase in his adjusted sentence.[8]

The trial court intimately referenced defendant's criminal history, both before and after his guilty plea, his prior probation revocations, and the defendant's fleeing the state after imposition of sentence as the primary reasons for the imposition of a 27-year sentence. Conversely, the record shows mitigating factors including the defendant is a father to four children, attended barber school in Texas and maintained consistent employment associated therewith, and has eschewed felonious activities since his imposition of the original sentence until the time of his arrest and subsequent extradition. In addition, the Court noted several statutory mitigating circumstances – lack of a victim other than the State, no pecuniary gain in

---

[7] La. R.S. 14:95.1 and La. R.S. 14:95 respectively.

[8] The nature of the crimes requires no probation, parole, or suspension of sentence-thus exacerbating and underscoring the excessiveness of the sentence.

the commission of the offense, no risk of death to one or more persons, no use of force or violence, and no permanent injury or economic loss of a victim.

During the imposition of original sentence, the trial court was aware of defendant's age as well as the previous offenses committed.[9] Prior to sentencing, the trial court noted there were two *pending charges* for distribution of methamphetamine and distribution of marijuana.[10] In addition, the trial court found defendant's criminal conduct which continued "without pause" after he fled to Texas and became a fugitive from justice demonstrated an undue risk during any period of probation he would in fact commit other crimes.[11] The Court found defendant was seriously in need of correctional treatment which could only be provided through a custodial environment.[12] Judge Hamilton summarized the primary grounds for the sentences imposed as follows:

> Therefore, based **primarily on this defendant's extensive criminal history, non-stop from the age of seventeen, the defendant's failure to complete successfully any probationary period to which he was exposed** and the fact that he absconded the jurisdiction of this Court to avoid putting into effect the agreement that he had made

---

[9] Pleasant was 32 years of age at the time of original sentence and 40 and the time of resentencing.

[10] The State did not dismiss the charges of two counts of distribution of methamphetamine and one count of distribution of marijuana in Docket No. 2015-483F and he was released on his own recognizance and the case was continued pending Defendant's return for his sentencing hearing.

[11] La C. Cr. P. art. 894.1 A (1) When a defendant has been convicted of a felony or misdemeanor, the court should impose a sentence of imprisonment if any of the following occurs: (1) There is an undue risk that during the period of a suspended sentence or probation the defendant will commit another crime.

[12] La. C. Cr. P. art 894 A (2) The defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution.

> with the State of Louisiana, the Court sentences
> the defendant on the charge of possession of a
> firearm by a convicted felon to a hard labor term of
> twenty years with the Department of Corrections.
> On the charge of illegal possession of a weapon
> this Court sentences the defendant to serve a
> period of seven years at hard labor with the
> Department of Corrections, these sentences will
> run consecutively with each other for a total prison
> term of twenty-seven years. That's the sentence of
> this court.
> (Emphasizes added.)

Although the trial court is given wide discretion to impose sentencing, our review of the record and supporting jurisprudence evinces no basis for the 27-year consecutive sentence imposed as the defendant's sentencing of 27 years for two crimes – possession of firearm by convicted felon and illegal possession of firearm – is grossly disproportionate to the severity of the crime. The trial court was well acquainted with the breadth and depth of defendant's criminal history at the time of imposition of the plea agreement. Notwithstanding, it can be assumed the Court believed defendant's catalog of convictions and pending charges were not of such a heinous nature as to merit immediate incarceration pending *execution* of his sentence. However, even if the trial court considered defendant's charges in Texas,[13] those charges are insufficient to justify such a brazen upward deviation to a 27-year sentence. Further illuminating this position for purely illustrative and exemplary context, had the defendant waived any delays in his sentence, immediately begun the process for incarceration, rehabilitation, and re-entry, and then while en route to the facility subsequently decided

---

[13] Possession of marijuana, possession of controlled substance, failure to provide truthful information as to identity, failure to identify as a fugitive/ intentionally giving false information, fraudulent use of or possessing identifying information, all misdemeanors and dismissals.

**grabbing a deputy's firearm and/or commandeering a state vehicle to effectuate an aggravated escape was in his best interests**, the maximum sentence available in our current laws is a **five to ten-year sentence.**[14]

In reviewing a trial court's sentencing discretion, three factors are considered: 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts. However, there is no requirement that specific matters be given any particular weight in sentencing. *State v. Lasalle*, 22-577 (La. App. 5 Cir. 8/18/23), 370 So. 3d 521, *writ not considered,* 24-00253 (La. 4/16/24.

Comparatively, defendant's 27-year sentence for possession of a firearm by convicted felon and illegal possession of firearm as a fourth offender is excessive considering sentences imposed for similar crimes by other courts are significantly less than those of the defendant. In *State v. Johnson,* 09-862 (La. App. 3 Cir. 2/3/10), 28 So. 3d 1263, the defendant was sentenced to ten years for possession of a firearm by a convicted felon and five years for illegal possession of stolen firearm. The defendant committed four felonies in the previous six years yet received the minimum possible sentence for possession of a firearm by a convicted felon.

Given the scant circumstances, the best method to determine excessiveness within the framework of our law and jurisprudence requires a perspective from the fictional character, Sherlock Holmes, whereby he

---

[14] La. R.S.14:110 C(2) Aggravated escape is the intentional departure of a person from the legal custody of any officer of the Department of Public Safety and Corrections or any law enforcement officer or from any place where such person is legally confined when his departure is under circumstances wherein human life is endangered.

Whoever commits an aggravated escape as herein defined shall be imprisoned at hard labor for not less than five years nor more than ten years and any such sentence shall not run concurrently with any other sentence.

comments, "I know what is good when I see it."[15]  This standard of review later was adapted by United States Supreme Court Justice Potter Stewart to describe his threshold test for obscenity in *Jacobellis v. Ohio*.[16]

Applying this standard with full understanding of the arbitrariness of its nature, our review of the three factors set forth in *State v. Lasalle, supra*, indicates the sentence imposed was excessive. Moreover, the unwillingness to jurisprudentially define what is considered abuse of discretion has led courts to sentence according to their preference absent the seriousness of the crime committed by a suspect.  Herein, the 20-year sentence for possession of firearm by a convicted felon does not provide defendant with any possibility of probation, parole, or reduction of sentence.  Nevertheless, other defendants who have committed more heinous crimes than defendant are being sentenced within the same range as defendant.

The nature of the crimes below and the sentences imposed indicate an unbalanced footing within the sentencing guidelines. The inability to interpret what constitutes an abuse of discretion has led to incomparable sentencing based on the nature of the crime. Without a proper foundation, trial court judges will continue to impose sentences which shock the conscience. This Court's interpretation of the worst offender/ worst crime analysis indicates defendant is not the worst of offenders. However, by imposing the maximum sentence, the trial court has implied this defendant *is the worst type of offender*. The following cases seek to illustrate and thus

---

[15] Arthur Conan Doyle*, The Hound of the Baskervilles, reprinted* in The Illustrated Sherlock Holmes Treasury 527, 535 (Avenel Books 1976) (1902).

[16] *Jacobellis v. State of Ohio*, 378 U.S. 184, 84 S. Ct. 1676, 12 L. Ed. 2d 793 (1964).

illuminate disparities and further how abuse of discretion cannot be viewed as a whole but rather case by case. Let us provide the context.

A review of cases rendered by this Court reveal defendants have received similar sentences after committing offenses which were significantly more heinous. In *State v. Dungan*, 54,031 (La. App. 2 Cir. 9/22/21), 327 So. 3d 634, *writ denied,* 21-01679 (La. 1/26/22), 332 So. 3d 82, this Court affirmed the defendant's consecutive sentences of 30 years at hard labor for manslaughter and ten years at hard labor for obstruction of justice. In *Dungan*, the defendant and her 71-year-old brother lived together on a farm. The defendant stated the victim executed a will naming the defendant as the primary beneficiary of his estate. Two weeks later, the victim vanished, and the defendant alleged the victim left for work in Iowa. The family became suspicious and suspected defendant was involved in the disappearance. Law enforcement investigated for months and were not immediately successful. Surprisingly, the defendant admitted after multiple attempts she finally succeeded in killing the victim.

In *State v. White,* 53,444 (La. App. 2 Cir. 4/22/20), 293 So. 3d 1274, *writ not considered,* 21-00197 (La. 8/6/21), 322 So. 3d 246, this Court affirmed the defendant's 20-year at hard labor sentence for manslaughter. In this case the defendant during an argument stabbed her boyfriend in the shoulder with a steak knife. As her boyfriend ran out of the house, the defendant stalked him, stabbed him in his knee, and struck an artery causing him to bleed to death. The defendant then proceeded to walk back inside the house, scrub the knife clean, and place the weapon in the dish drainer as if the encounter never happened.

In *State v. Dowles*, 54,483 (La. App. 2 Cir. 5/25/22), 339 So.3d 749, this Court affirmed the defendant's consecutive sentences of 35 years at hard labor for manslaughter and 15 years at hard labor for armed robbery. The defendant's original indictment was for one count of second-degree murder and one count of conspiracy to commit armed robbery. After the defendant and his codefendant agreed to rob Charley Island, the defendant drove his codefendant to a point near the victim's house for the purpose of committing an armed robbery. The defendant observed his codefendant exit the vehicle and meander toward the victim's house where he then heard a gunshot. Thereafter, the codefendant scurried back to the car and told the defendant to "go go go." The codefendant later informed the defendant he shot Charley Island. The defendant was 17 years old at the time of commission of these offenses.

In *State v. Ware*, 55,046 (La. App. 2 Cir. 5/10/23), 362 So.3d 1027, this Court affirmed the defendant's sentence to serve 20 year's imprisonment at hard labor, to run concurrently with any other sentence he would be required to serve, and with credit for any time served for manslaughter. In *Ware*, the defendant and three other young males camped at an apartment complex, placed a call to order a pizza, and planned to rob the delivery person who arrived with their order. When the unsuspecting pizza delivery person arrived, the men pelted shots at the delivery vehicle. The driver of the delivery car was killed by two of the shots fired by the men. One of the assailants was armed with a 9-mm handgun and the fatal shots were consistent with having been fired from an assault rifle used by either two of the young males. Although he initially fled when his accomplices opened fire, upon his return to the scene, the defendant fired at

14

least three shots from his weapon into the air. The defendant pled guilty to manslaughter pursuant to a plea agreement with an agreed-upon sentencing cap of 20 years.

In *State v. Johnson*, 54,954 (La. App. 2 Cir. 5/10/23), 361 So.3d 597, this Court affirmed a 20-year sentence at hard labor following a guilty plea to one count of aggravated second-degree battery and one count of home invasion. In this case, Alexis Johnson ("Alexis") called the Rayville Police Department ("RPD") complaining her ex-husband, the defendant, was in her yard causing a disturbance. Officers from the RPD were dispatched to the home. But by the time of their arrival, the defendant had already fled. Shortly thereafter, the defendant returned to the house, kicked in the front door, and exclaimed he was going to kill everyone present including Alexis's children and her live-in boyfriend ("Griffin"). The defendant began by attempted to stab Alexis with a knife. However, he narrowly missed and slit her shirt. As the defendant attempted a second deadly strike, Griffin placed his hand in front of the victim resulting in a gash to his hand and a slash on his back. Griffin then fled to the bedroom where he barricaded himself. However, the defendant persisted in his attempt to break through the door. Griffin then decided to flee, was subsequently caught by the defendant, and stabbed several times before he was eventually able to escape to the neighbor's house. The defendant then dragged Alexis down the hallway by her hair before her oldest son armed himself with a knife and attempted to intervene. Despite this well-developed criminal spree, the defendant entered a plea agreement whereby he was allowed to plead guilty to second-degree battery and home invasion. The agreement limited the

defendant's total exposure on both charges to a maximum of 20 years at labor and stipulated each sentence would run concurrently.

In *State v. Allen*, 50,515 (La. App. 2 Cir. 4/13/16), 194 So.3d 649, this Court affirmed the defendant's sentence to serve 25 years at hard labor for second degree cruelty to a juvenile. In this case, the defendant was driving a car with her children, ages 20 months old and seven years old. The defendant negligently positioned the 20-month-old child in the front passenger seat against the door, and as she careened the car around a curve at an excessive rate of speed, leant over and opened the passenger door causing the child to be ejected from the vehicle. As a result, the child suffered a broken arm and numerous abrasions. Although corrective surgery was performed, the child's arm remained paralyzed from the elbow down.[17] The defendant was charged by bill of information with second degree cruelty to juveniles. She eventually entered a plea agreement pleading guilty as charged to second degree cruelty to juveniles. Under the terms of the agreement, a sentencing cap of 28 year at hard labor was implemented. The State agreed to remain silent as to sentencing and waived its right to charge the defendant as a habitual offender. The sentence would run concurrently with another sentence previously imposed and she would receive credit for time served.

In *State v. Fulford*, 53,141 (La. App. 2 Cir. 1/15/20), 288 So. 3d 911, this Court affirmed the defendant's concurrent sentences of 12 years at hard

---

[17] At the time of this offense, the defendant was already on probation after pleading guilty to aggravated arson, in another act of violence on her part perpetrated against her own children. The defendant set her mother's house on fire while two of the defendant's young children were inside. The children were rescued from the dwelling. The defendant was given an eight-year hard labor sentence for that offense, which was suspended, and she was placed on supervised probation for five years.

labor, a fine and court costs for aggravated arson, and 4 years at hard labor for aggravated cruelty to animals with no fine or costs. In this case, the defendant was originally charged with aggravated arson, attempted first degree murder, aggravated cruelty to animals and insurance fraud. The charges arose from a fire set by the defendant in his mobile home occupied at the time by defendant, his disabled wife, and her service dog. While his wife was watching television, the defendant lit a paper towel and placed it in the spare bedroom. When she complained of the smell of smoke, the defendant went outside with the dog to inspect, only to return stating he found nothing burning. Once smoke billowed throughout the mobile home, the defendant stood outside at the door and told his wife to come to his voice to get out safely. This is particularly insidious given defendant was aware the wife suffered numerous medical conditions inclusive of walker-assisted mobility. Despite her inability to find her glasses, she somehow managed to scramble to the door without his assistance. As a result of the fire, the wife sustained third-degree burns to her back and shoulder area. The disabled wife's service dog perished in the fire and its remains were later discovered in the hallway near the master bedroom.

During the investigation, the defendant, a volunteer fireman, admitted he had previously started two fires at two of his residences and one to his vehicle because he was tired of making payments. He admitted using the same method when setting the previous fires (lighting paper towels on fire). He also admitted igniting the fire at the mobile home but denied initially intending to kill his wife. He later agreed, however, he was trying to cease her pain and suffering caused by her medical conditions.

The defendant pled guilty to aggravated arson and aggravated cruelty to animals in exchange for the State's dismissing the remaining charges of attempted first degree murder and insurance fraud. There was no agreement to sentencing except the sentence would run concurrently, and the Court ordered a presentence investigation report (PSI).

In *State v. Yetman*, 54,883 (La. App. 2 Cir. 1/11/23), 354 So.3d 1262, the defendant pled guilty to five counts of sexual abuse of an animal by engaging in sexual contact and one count of possession of pornography involving juveniles. In providing the factual basis for the defendant's guilty pleas, the State alleged in each incident, the defendant recorded a dog licking his genitals. In providing the factual basis for the defendant's guilty plea to one count of possession of pornography involving juveniles, the State expressed the defendant knowingly and intentionally possessed a photograph depicting a male child under the age of 17 years old engaging in a sexually performative acts inclusive of masturbation. Both the videos and photograph were recovered from the defendant's iCloud account. The defendant affirmed the factual basis for each of his offenses were accurate. He was sentenced to serve consecutive sentences of 20 years for sexual abuse of an animal and 20 years at hard labor with five years to be served without benefits for possession of pornography. The trial court noted sexual behavior involving children and animals is particularly difficult to treat and concluded a lesser sentence would deprecate the seriousness of the defendant's crimes and his offenses "shock the senses…[of] what a reasonable person would consider as normal behavior." Further adding to the shocking nature of his offenses, the trial court stated the defendant was a police officer at the time the offenses occurred with a previous commission

18

as a K9 officer. This Court affirmed the defendant's convictions and sentences.

In *State v. Ward*, (La. App. 2 Cir. 6/30/21), 324 So.3d 231, police officers responded to the scene of a shooting in Winnsboro, Louisiana. As they arrived, officers observed the defendant fleeing in a vehicle at high rate of speed. The officers attempted to stop the defendant to no avail as he refused to comply. After driving at speeds eclipsing 100 mph, crossing the center line, and traveling into oncoming traffic on Highway 4, the defendant finally halted the vehicle. Officers searched the vehicle and found a plastic Glock pistol case and four magazines (two of which contained .40 caliber ammunition matching the spent shell casings at the scene of the shooting). On the driver's side floorboard, officers also found a plastic bag of several multi-colored tablets later determined to be methamphetamines.

Pursuant to a plea agreement, the defendant pled guilty to aggravated flight from an officer and possession of methamphetamine. The State agreed to dismiss the attempted second-degree murder charge, as well as another unspecified charge. There was no sentencing agreement, but the parties agreed the defendant would be sentenced by the trial court following the submission of a PSI. After reviewing the PSI, the trial court determined the defendant had previously been convicted of misdemeanor possession of marijuana, and accordingly sentenced the defendant to an enhanced sentence of 10 years at hard labor for the conviction of possession of methamphetamine. As for the aggravated flight from an officer conviction, the defendant was sentenced to 5 years at hard labor. The trial judge ordered the sentences be served concurrently.  This Court affirmed the convictions and sentences.

19

In the present case, the sentences imposed were neither narrowly tailored to the offenses committed nor the offender. The trial court's decision to go from the previously agreed-upon 10-year concurrent sentences, without additional meritorious factors, to a 27-year consecutive sentence for the crimes committed is excessive, particularly when compared to sentences imposed relative to more heinous crimes by the same court. The offenses committed by the exampled cases of defendants above involve violence against person, property, including the risk of death to one or more persons, force of violence, and permanent injury, all of which the trial court specifically noted were not present when discussing the statutory mitigating factors. This indicates the trial court lacked a true basis in sentencing defendant to 27 years for two crimes occurring from of the same conduct or transaction.[18] Although the trial court determined the reasoning was based on the defendant's absconsion, the sentencing does not align with the crime committed.

In *Ward,* the defendant received a sentence of 10 years for aggravated flight from an officer and possession of methamphetamine arising from the same conduct. The aggravated flight from an officer is similar in context to defendant absconsion. The facts indicate the trial court used the defendant's absconsion as a factor in the upgrade of sentence from the original 10-year concurrent sentence. *Ward* provides a basis for fleeing and it determined a 10-year sentence more intimately fits the crime based on two crimes arising out of the same conduct.

---

[18] The Court will later address the ability for the State to charge two separate crimes arising out of the same conduct, transaction, or occurrence to which a defendant must defend himself.

20

Contrarily, in the present case, the trial court determined absconsion, absent any other remarkable crimes committed thereafter, was the basis for a 27-year consecutive sentence. However, simply absconding to avoid execution of a sentencing hearing does not make the defendant the worst of offenders to necessitate the imposition of the maximum sentence. In fact, the trial court, having reviewed the criminal record in full, opined at the time of imposition defendant was not the worst of offenders as defendant was released on his own recognizance pending sentencing.[19] Furthermore, with a review of life expectancy vis-à-vis life sentences, a 27-year sentence is analogous to a life sentence for this defendant who was 32+/- years old at the time of the original sentencing and roughly 39 at the time of capture.

Our review of the record does not merit a 27-year sentence when considering the profile of cases encompassing greater violence within the sentencing range of defendant. The above cases are clearly heinous in nature and justice was not temperamental or vindictive in those cases. As outlined above, other cases have shown defendants who have committed more violent crimes have not received maximum and near-maximum sentences. More simply stated, a defendant can receive a similar sentence for acts against a person such as aggravated second-degree battery, second degree cruelty to a juvenile, and manslaughter than a defendant possessing an illegal firearm.

The quantum leap in sentencing is unjustifiable by any other measure than punitive heartfelt messaging to others who dare abscond. No penological purpose is served except to inflict harm. The fact many jurisdictions do not expressly prohibit the sentencing practice at issue is not

---

[19] The Court was also aware of other pending felony charges.

21

dispositive because it does not necessarily follow that the legislatures in those jurisdictions have deliberately concluded that such sentences would be appropriate.[20]

Moreover, the trial court imposed consecutive sentences based on defendant's criminal conduct as a fugitive demonstrated an undue risk during any period of probation he would in fact commit other crimes. According to La. C. Cr. P. art. 883, when the convictions for two or more offenses are based on the same act or transaction, or are part of a common scheme or plan, the terms of imprisonment shall be concurrent unless there is a *specific directive* they be served consecutively. In this case, the record does not clarify the reasons why consecutive sentences were imposed for two charges arising out of the same act. There are no specific facts indicating treatment of the defendant as a grave risk to the safety of the community. A sentence violates La. Const. art. I § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. A sentence is considered grossly proportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. *State v. Myrick*, 54,606 (La. App. 2 Cir. 9/21/22), 349 So. 3d 92. The record does not reflect the defendant is the worst of offenders or the crimes committed are the worst offenses.

This case is analogous to *State v. Stewart*, 03-976 (La. App. 5 Cir. 12/30/03), 862 So. 2d 1271. In *Stewart,* the Fifth Circuit Court of Appeal

---

[20] *Thompson v. Oklahoma*, 487 U.S. 815, 108 S. Ct. 2687, 101 L. Ed. 2d 702 (1988).

held defendant could not challenge excessiveness of his sentence because he was sentenced in conformity with a plea agreement. In *Stewart*, the plea agreement stated defendant was to receive five years at hard labor on each count to run concurrently and the State waived its right to multiple bill the defendant. Similarly, in this case defendant received a 10-year sentence for two charges to run concurrently and the State waived the habitual offender implications. However, in *Stewart,* during the plea colloquy the Court warned the defendant he could receive the maximum ***and*** the State could file a multiple bill in the event he failed to appear. Subsequently, the defendant failed to appear and the Court sentenced him under multiple bill to imprisonment at hard labor for seven years, to run consecutively with the five-year sentence on the other count resulting in a total of 12 years.

In this case, defendant was aware of the maximum sentence of the possession of a firearm by a convicted felon but not the illegal possession of a weapon. The Court made no mention of the State charging defendant as a habitual offender if he failed to appear. Consequently, defendant failed to appear which resulted in the maximum sentence of 20 years for the possession of a firearm by a convicted felon and near maximum of seven years for illegal possession of a firearm without a basis for such harsh punishment absent the habitual offender charge.

In *State v. Green*, 16-0107 (La. 6/29/17), 225 So. 3d 1033, 1042, *cert. denied*, 138 S. Ct. 459, 199 L. Ed. 2d 338 (2017), the Louisiana Supreme Court stated:

> Here, defendant's conduct transpired within a very short period at one location. Thus, we find the presumption in favor of concurrent sentences applies, and the issue is whether the trial court abused its discretion by imposing consecutive

23

terms. Absent well-articulated reasons from the sentencing court, we decline to say whether it was an abuse of discretion to impose consecutive terms. Thus, we will remand the matter to the trial court to consider whether defendant indeed poses a grave risk to public safety and, at a minimum, to articulate reasons for the consecutive terms.

The presumption of concurrent sentences applies to the record before us. Therefore, we find the trial court erred in imposing consecutive rather than concurrent sentences. The imposition of the maximum sentence utilized by the trial court in this case was unconstitutionally excessive. Since we have so little information before us upon which to base a review of the excessiveness of the sentence imposed for possession of a firearm by a convicted felon and illegal possession of a weapon, the defendant's sentences are vacated, and we hereby remand this matter to the trial court for resentencing in accordance with this opinion.

## CONCLUSION

For the foregoing reasons, we affirm defendant's convictions. However, we vacate defendant's sentences, and remand this matter to trial court for resentencing in accordance with this opinion.

**CONVICTIONS AFFIRMED; SENTENCES VACATED; REMANDED.**

**THOMPSON, J., concurs in part and dissents in part.**

I concur with the majority in affirming the convictions and in reversing the consecutive nature of sentences, but dissent from vacating the length of the sentences imposed by the trial court. While the defendant and the state may have agreed to a *recommended* sentence, the ultimate length of the sentence was left to the broad discretion of the trial court. This trial court clearly put the defendant, who was being released on his own recognizance pending sentencing, on notice the recommended sentence would *not* be followed if he failed to show up for sentencing. In the record before us, the colloquy of the court accepting Pleasant's guilty plea on January 6, 2016, when accepting Pleasant's guilty pleas, makes that fact abundantly clear:

> Court: Okay. All right. Upon the record before me, I find that the please is entered freely, voluntarily with both an understanding of the nature of the changes and the consequences of the pleas including Mr. Pleasant's understanding of the plea agreement. I also find that each has a factual basis containing all the elements of the crime charged, the plea is therefore accepted and the Court now—the pleas are therefore accepted and the Court now adjudicates you guilty of the offenses charged. And as we had talked about I'm going to set sentencing for May the 10th of 2016. As we discussed, **if you come back to Court on May 10th for sentencing I'm going to sentence you just like the plea agreement says.**
> Mr. Pleasant: Yes, sir.
> Court: **But** I'm—because since we're going to release you on your own recognizance with the pending charges that are still left, **if you don't show up then I'm free to sentence you to any—something higher than that, I could go to twenty years on the possession of a firearm**, I could go to—I can't remember what it is, but I could go to—I could go higher than we agreed if you don't—if you did not show up. **Do you understand that?**
> Mr. Pleasant: **Yes.**

(Emphasis added).

Notably, when he entered his guilty pleas, Pleasant received the considerable benefit of the State dismissing his other pending felony charges and agreeing to not charge him as a habitual offender, which would have enhanced the period of his incarceration. Pleasant now seeks to reap the benefits resulting from a more lenient sentence, without being exposed to the other previously dismissed charges being reinstituted or being exposed to being sentenced as a habitual offender after absconding the state. All that was required of Pleasant to benefit from the extremely generous recommended sentences was to show up and accept it. Pleasant refused to do so and, thus, subjected himself to exactly what the trial court warned him would happen – sentencing in accordance with the law and based upon the facts. That discretion is firmly rooted within the purview of the trial court, and I disagree with the majority that the length of the sentences, under these specific facts and circumstances with this defendant, was excessive. Accordingly, I respectfully dissent on that issue, and concur with the majority in affirming the convictions and reversing the consecutive nature of the sentences for the reasons set forth in the opinion.