788 So.2d 589 (2001)
STATE of Louisiana
v.
George KING (Sentenced as "George N. King").
No. 00-KA-1434.
Court of Appeal of Louisiana, Fifth Circuit.
May 16, 2001.
Order Denying Rehearing July 25, 2001.
*590 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Rebecca J. Becker, Donald A. Rowan, Jr., Assistant District Attorneys, Gretna, LA, Attorneys for Plaintiff/Appellee.
Kay M. Franks, Louisiana Appellate Project, Baton Rouge, LA, Attorney for Defendant/Appellant.
Panel composed of Judges SOL GOTHARD, JAMES L. CANNELLA and PATRICK M. SCHOTT, Pro Tempore.
GOTHARD, Judge.
Defendant, George King, appeals his conviction of manslaughter and his sentence of twenty-five years imprisonment as a result of that conviction. For reasons that follow, we affirm.
Defendant was charged by Grand Jury Indictment with two counts of criminal behavior. Count one charged defendant with the second degree murder of Taron Griffin in violation of LSA-R.S. 14:30.1; *591 count two charged defendant with possession of cocaine, in violation of LSA-R.S. 40:967 F.[1] Defendant entered a plea of not guilty to both counts. After a jury trial on the charge of second degree murder, defendant was found guilty of the lesser charge of manslaughter. In due course, he was sentenced to serve twenty-five years at hard labor. At the time of sentencing, defense counsel orally objected to the sentence and advised the court of his intention to appeal the conviction and sentence. Because the oral motion for appeal was not followed up with a written motion, defendant filed a pro se Motion to Enforce Direct Appeal Procedure, which was granted.
The testimony offered at trial shows that the defendant and the victim knew each other for some years before the murder and had a history of acrimonious incidents. Defendant testified that he had problems in the past with Griffin. In 1996, Griffin car-jacked a vehicle defendant was driving. Griffin pointed a revolver at defendant, told him to get out of his car, and left defendant on the side of the road. About 10:00 p.m. on the night of the car-jacking, Griffin forced his way into defendant's house and took his money. The incidents were reported to the police, but Griffin was never tried for the car-jacking or the robbery, and defendant never got the car or the money back. Defendant was present at another time when Griffin shot a man in the face and the arm.
The record also shows that Griffin was imprisoned for shooting someone in the face and neck. Detective Mike Tucker, of the Jefferson Parish Sheriffs Office, testified that Taron Griffin pled guilty in June of 1997 to shooting someone with a gun. He further testified that five bags of marijuana were found on Griffin's body at the scene of the murder on June 22, 1998. Detective Tucker stated that the first casing fired from defendant's gun was found near the curbside, and the remaining casings were found in the rear yard of the home where Griffin was killed. Griffin was wedged between the house and a truck when his body was found.
State witnesses testified that defendant made several telephone calls to Griffin's family members telling them he was looking for Griffin. Defendant later found Griffin at the home of his sister, Catrina Griffin. After a heated discussion in the front yard, defendant shot Griffin several times. Witnesses testified that defendant took a gun out of his vehicle and fired one shot. The gun jammed and defendant struggled with it while the victim backed away. Defendant was able to get the gun working again and began firing at Griffin, killing him. Defendant left the area in his vehicle.
In his testimony, defendant admitted shooting Griffin after the two men had an argument. Defendant testified that he arrived at his home on June 21, 1998 and saw Griffin standing in front of the door. Defendant told Griffin he wasn't going to "fool" with him, and he left to go to his girlfriend's house. When defendant returned home at 8:00 a.m. the following morning, he found that his door had been kicked in. When he went inside, he saw that his home had been ransacked. Cabinet doors were swung open and $1,500.00 was missing. When a neighbor told defendant it was Griffin who kicked in the door, defendant became very angry, got in his truck, and went to find Griffin to get his money back. Defendant brought an AK-47 with him, which he put on the passenger seat of his vehicle. He went to 133 *592 Rosalie Street and knocked on the door. When Griffin came outside, defendant told Griffin that he wanted his money back, and Griffin told him to get his "m... f... a..." from around his house. Griffin told him to take his "m... f..." money from him if he was "man enough." At that point, defendant went to his truck and got his gun. When he turned around, Griffin was right in front of him. Defendant pointed the gun down, but Griffin grabbed it, and the gun went off. The bullet hit the concrete, and the gun jammed. When Griffin saw that the gun had jammed, he backed up toward the yard and said, "I'm going to get something for your m... f... a... now." Defendant unjammed the gun, shot it, and continued to shoot it. He then turned around and went back to his truck. After the shooting, he threw the gun into the woods.
Defendant stated that he weighed 200 lbs., and that he was a much smaller man than Griffin, who according to other testimony weighed about 380 lbs. Defendant testified that he regretted going over to Griffin's house that day, and that he was sorry he killed him. After the shooting, defendant went to Houston, Texas to see his son. When he returned home, he turned himself in to the Sheriff's Department without a lawyer. He admitted on cross-examination that he told Catrina Griffin when he called that he was going to kill Taron.
In the two assignments of error briefed by defendant, he asserts that his sentence of twenty-five years is excessive and that his trial counsel was ineffective in that he failed to file a motion to reconsider the sentence, and failed to preserve the issue of sentencing for appellate review. Because the two assignments are related, we will address both in one discussion.
A claim of ineffective assistance of counsel is most appropriately addressed through an application for post-conviction relief rather than direct appeal, so as to afford the parties an adequate record for review. State v. Truitt, 500 So.2d 355, 359 (La.1987); State v. McIntyre, 97-876 (La. App. 5 Cir. 1/27/98), 708 So.2d 1071, 1075, writ denied, 98-1032 (La.9/18/98), 724 So.2d 753. Only when the record contains sufficient evidence to decide the issue and the issue is properly raised by assignment of error on appeal, may it be addressed in the interest of judicial economy. State v. Peart, 621 So.2d 780, 787 (La.1993); State v. McIntyre, supra, 708 So.2d at 1075. The appellate record in this case contains sufficient evidence for consideration of the claim of ineffective assistance of counsel. Accordingly, we will address the issue.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution of 1974. In assessing a claim of ineffectiveness, a two-pronged test is employed. The defendant must show that (1) his attorney's performance was deficient, and (2) the deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Soler, 93-1042 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075. The error is prejudicial if it was so serious as to deprive the defendant of a fair trial, or "a trial whose result is reliable." Strickland v. Washington, 466 U.S. at 687, 104 S.Ct. at 2064; State v. Serio, 94-131 (La.App. 5 Cir. 7/1/94), 641 So.2d 604, 607. In order to show prejudice, the defendant must demonstrate that, but for counsel's unprofessional conduct, the outcome of the trial would have been different. Strickland v. Washington, 466 U.S. at 694, 104 S.Ct. at 2068; State v. Soler, supra, 636 So.2d at 1075.
In brief to this court, defendant argues that the sentence is excessive and that the *593 trial court erred in failing to consider the mitigating factors set forth in LSA-C.Cr.P. article 894.1.
The record shows that defense counsel made a general oral objection to the sentence at the time it was imposed, but the objection was not specific enough to satisfy the requirements of LSA-C.Cr.P. article 881.1. Nevertheless, this court has routinely reviewed sentences for constitutional excessiveness despite a defendant's failure to file a timely motion to reconsider sentence. State v. Hester, 99-426 (La.App. 5 Cir. 9/28/99), 746 So.2d 95. However, the failure to file a motion to reconsider sentence pursuant to LSA-C.Cr.P. article 881.1 limits a defendant to a bare review of the sentence for constitutional excessiveness. Id.
Defendant argues that the trial court erred in imposing a sentence which is constitutionally excessive. He claims that the trial judge failed to articulate reasons for sentencing as mandated by LSA-C.Cr.P. art. 894.1, and that he did not ask for a pre-sentence investigation to support his sentencing choice. Defendant contends that his trial counsel presented no mitigating information, did not ask for a pre-sentence investigation, nor did he object that one was not ordered. In addition, defendant argues that his trial counsel did not ask for articulated sentencing reasons or object that they were not given.
Although the issues were not preserved for appeal, we will consider the defendant's specific objections to the sentence, as well as the constitutional excessiveness, in order to properly assess the claim of ineffectiveness of counsel.
Defendant claims that the following mitigating factors were not considered by the trial judge prior to sentencing: (1) Griffin's actions provoked the anger that drove defendant to confront him; (2) defendant was aware that after pulling a gun on Griffin, his fate was sealed; (3) defendant suffered remorse for his action, turned himself in, and acknowledged his guilt, making it likely that his conduct was precipitated by circumstances unlikely to recur; (4) because of defendant's youth, defendant was likely to respond affirmatively to rehabilitation rather than to lengthy incarceration; (5) defendant was only 20 years old at the time of the offense and had no felony record; (6) defendant's actions following the offense suggested that he had particularly strong family ties; and (7) the lengthy incarceration would entail an emotional, if not financial hardship, on defendant's family.
The state responds that the record shows the trial judge considered the facts of the case and defendant's record prior to imposing sentence. The state argues that, even if the trial judge failed to comply with LSA-C.Cr.P. art. 894.1, the record clearly shows an adequate factual basis for the sentence imposed. The state further argues that the sentence received by defendant is within the statutory guidelines set by the Legislature.
Defendant herein was convicted of manslaughter and sentenced to imprisonment at hard labor for 25 years. The penalty for manslaughter is found in LSA-R.S. 14:31(B):
Whoever commits manslaughter shall be imprisoned at hard labor for not more than forty years....
The law regarding excessive sentences was set forth by this court in State v. Hester, supra, 746 So.2d at 103:
The Eighth Amendment to the United States Constitution and Article I, Section 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate *594 to the offense or imposes needless and purposeless pain and suffering. Even a sentence which falls within statutory limits may be excessive under certain circumstances. Once imposed, a sentence will not be set aside absent a showing of manifest abuse of the trial court's wide discretion to sentence within statutory limits. (citations omitted)
In reviewing a sentence for excessiveness, the appellate court must consider the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice. State v. Jackson, 597 So.2d 1188, 1189 (La.App. 5 Cir.1992). The trial judge is afforded wide discretion in determining a sentence, and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed. State v. Daigle, 96-782 (La.App. 5 Cir. 1/28/97), 688 So.2d 158, 159, writ denied, 97-0597 (La.9/5/97), 700 So.2d 506.
Further, if there is an adequate factual basis for the sentence contained in the record, the trial court's failure to articulate every circumstance listed in article 894.1 will not require a remand for re-sentencing. State v. Tribbit, 00-153 (La. App. 5 Cir. 8/29/00), 767 So.2d 901, 903-904, citing State v. Morris, 98-236 (La. App. 5 Cir. 9/16/98), 719 So.2d 1076, 1082.
In State v. Hurst, 99-2868 (La.App. 1 Cir. 10/3/00), 2000 WL 1476613, pp. 7-8, ___ So.2d ___, ___, defendant fought with and killed her father's girlfriend. The jury convicted defendant of manslaughter, and the court upheld the 20 year sentence. In State v. George, 33,859 (La.App. 2 Cir. 9/27/00), 768 So.2d 748, defendant and his former girlfriend, the victim, had a sexual relationship which resulted in the birth of a son. Defendant ended their relationship and started dating another woman. The victim harassed the defendant by repeatedly telephoning and visiting his home, and defendant killed her. Although defendant was indicted for second degree murder, he was convicted of manslaughter and sentenced to 25 years at hard labor. The court held that the sentence was not constitutionally excessive.
In this case, the state presented the testimony of Catrina Griffin, who stated that defendant told her he was looking for Taron because Taron had stolen money from him, and that when he found him, he was going to kill him. Three other witnesses testified that they saw defendant shoot Taron. Defendant testified that Taron had victimized him in the past, and that the police had done nothing to help him (defendant). Defendant stated he became angry when he learned that Taron had stolen money from him and kicked in his door. He stated that he took an AK-47 rifle with him when he went to confront Taron. Defendant claimed that he asked Taron for his money, and when Taron said he "wasn't man enough to take it," defendant got the gun and shot it. Defendant said that the first bullet hit the ground because Taron had grabbed the gun. While defendant was attempting to unjam the gun, he claimed that Taron began to go inside to "get something for his m..f..a.." Defendant then shot Taron several more times. Dr. Fraser MacKenzie testified that three shots penetrated the victim, one of which entered his right back. Although defendant was charged with second degree murder, the jury convicted defendant of the lesser crime of manslaughter. Prior to sentencing, defense counsel and the trial judge engaged in the following exchange:
MR. REGAN (Defense Counsel):
Yes, Your Honor. Martin Regan appearing on the record on behalf of Mr. George King. We're prepared for sentencing today with respect to the conviction for manslaughter. I would just simply suggest to the *595 Court, the Court heard all the facts in the case, and at this point I'd ask the Court to take into consideration the relationship with the victim, the problems he was having, at this point, and my client's relatively clean record, in imposing the sentence in this case.
THE COURT:
I've taken all those things into consideration, Mr. Regan, and like you said, I listened to the whole case, the jury found him guilty of manslaughter, and based on the conviction, the CourtMr. King, the Court is going to sentence you to twenty five years in the custody of the Department of Corrections, and give you credit for time served.
We believe the trial court adequately considered the facts of the case, defendant's relationship with the victim, and defendant's lack of a prior felony record before imposing sentence. Further, we find that the record supports the sentence imposed. The trial judge sentenced defendant to imprisonment at hard labor for 25 years, even though he could have sentenced defendant up to 40 years. Therefore, based on the foregoing, we find that defendant's sentence was not constitutionally excessive, and that the trial court did not abuse its broad sentencing discretion.
Because we find no merit in defendant's claim that his sentence was excessive, we find no merit in defendant's argument that his trial counsel was ineffective. For the foregoing reasons, we affirm defendant's conviction and sentence.
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The review reveals errors patent in this case.
The transcript reveals that the trial judge did not inform defendant of the prescriptive period for post-conviction relief as is mandated by LSA-C.Cr.P. art. 930.8, despite the commitment/minute entry which indicates otherwise. When there is a discrepancy between the transcript and the minute entry, the transcript will prevail. State v. Lynch, 441 So.2d 732, 734 (La.1983). LSA-C.Cr.P. art. 930.8 provides that a court shall not consider an application for post-conviction relief, including applications which seek an out-of-time appeal, if the application is filed more than two years after the judgment of the conviction and sentence has become final. We order the trial court to advise defendant of the provisions of LSA-C.Cr.P. art. 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this opinion and to file written proof that defendant received the notice in the record of the proceedings. State v. George, 99-887 (La.App. 5 Cir. 1/4/00), 751 So.2d 973, 975.
AFFIRMED AND REMANDED WITH ORDER.

APPLICATION FOR REHEARING DENIED
Defendant's pro se brief is untimely pursuant to this Court's order of December 1, 2000.
/s/ Sol Gothard
 JUDGE SOL GOTHARD
/s/ James L. Cannella
 JUDGE JAMES L. CANNELLA
/s/ Patrick M. Schott
 JUDGE PATRICK M. SCHOTT
 PRO TEMPORE
NOTES
[1] The counts were severed for trial and this appeal concerns only the conviction on the murder charge. The drug charge is separate and unrelated to this appeal.