STATE OF LOUISIANA

VERSUS

ODELL LEE ROBERTSON

NO. 23-KA-525

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 23-2732, DIVISION "E"
HONORABLE FRANK A. BRINDISI, JUDGE PRESIDING

October 23, 2024

**MARC E. JOHNSON**
**JUDGE**

Panel composed of Judges Marc E. Johnson,
Scott U. Schlegel, and Timothy S. Marcel

**AFFIRMED**
  **MEJ**
  **TSM**

**CONCURS WITH REASONS**
  **SUS**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
  Honorable Paul D. Connick, Jr.
  Juliet L. Clark
  Thomas J. Butler

COUNSEL FOR DEFENDANT/APPELLANT,
ODELL LEE ROBERTSON
  Gwendolyn K. Brown

**JOHNSON, J.**

Defendant/Appellant, Odell Lee Robertson, appeals his sentences for various felony drug possession and distribution convictions from the 24th Judicial District Court, Division "E". For the following reasons, we affirm Defendant's sentence and convictions.

## FACTS AND PROCEDURAL HISTORY

On June 13, 2023, the Jefferson Parish District Attorney filed a bill of information charging Defendant with distribution of fentanyl, in violation of La. R.S. 40:967(A) (count one), possession with intent to distribute fentanyl, in violation of La. R.S. 40:967(A) (count two), possession of a firearm by a convicted felon, in violation of La. R.S. 14:95.1 (count three),[1] possession with intent to distribute cocaine weighing less than 28 grams, in violation of La. R.S. 40:967(A) (count four), and possession with intent to distribute methamphetamine weighing less than 28 grams, in violation La. R.S. 40:967(A) (count five). All offenses were alleged to have been committed on or about May 17, 2023.[2] Defendant pleaded not guilty at his arraignment on June 14, 2023. The State amended count three of the bill of information to delete some of the prior convictions listed.[3]

Trial commenced before a 12-person jury on August 17, 2023. At trial, Deputy Nathan Gex of the Jefferson Parish Sheriff's Office ("JPSO") testified that he was involved in the apprehension of Defendant at Magnolia Express Discount,

---

[1] As to count three, the bill of information alleged that Defendant was previously convicted of simple burglary and attempted simple burglary, in violation of La. R.S. 14:62 and "La. R. S. 14:27/62" in case number 15-342, Division "G" on July 14, 2015; simple burglary, in violation of La. R.S. 14:62; in case number 13-5030, Division "G" on July 14, 2015; simple burglary (four counts), in violation of La. R. S. 14:62, in case number 11-387, Division "D" on March 2, 2011; simple burglary, in violation of La. R.S. 14:62; in case number 10-73, Division "J" on February 10, 2010; and "Simple Burglary, Burglary of an Inhabited Dwelling," in violation of La. R.S. 14:62, in case number 09-6179, Division "J" on February 10, 2010.

[2] As to count six, co-defendant Damian Rodriguez was charged alone for possession of fentanyl weighing less than two grams, in violation of La. R.S. 40:967(C).

[3] As to count three, the amended bill of information alleged that Defendant was previously convicted of simple burglary and attempted simple robbery, in violation of La. R.S. 14:62 and "La. R.S. 14:27/62" in case number 15-342, Division "G" on July 14, 2015; and simple burglary, in violation of La. R.S. 14:62, in case number 13-5030, Division "G" on July 14, 2015.

located at the intersection of 18th and Edenborn Streets in Metairie, Louisiana. He detailed his familiarity with the area and the store stemming from previous narcotics-related activities, including investigations and arrests. Due to this familiarity, he routinely observed individuals outside the store, noted nearby parked vehicles, and paid close attention to those parked on the store's side or behind it. In May 2023, Deputy Gex witnessed a white male, later identified as Mr. Rodriguez,[4] approaching a silver Chrysler 300 parked at the store. Subsequently, Defendant met with Mr. Rodriguez, and they conducted a narcotics transaction, described by the deputy as the "handing of narcotics from one person to the other."[5] Deputy Gex recalled the transaction unfolded quickly—Mr. Rodriguez turned away from Defendant, headed toward the Arnoult intersection, and then entered a driveway. Subsequently, while in his marked police vehicle, Deputy Gex attempted to stop them, but the transaction was too swift. He had to turn around, retrace his route, and follow Mr. Rodriguez as he crossed the street. Eventually, the deputy conducted a stop in the parking lot of an apartment complex.

Deputy Gex stated that he arrested Mr. Rodriguez, who was found in possession of a gram bag containing what the deputy believed to be fentanyl. Deputy Gex's body-worn camera was activated during this incident. The video footage from the deputy's body camera was played for the jury as Deputy Gex narrated the events. He detailed observing Mr. Rodriguez accept the narcotics transaction with his right hand. He described that once Mr. Rodriguez was stopped, Mr. Rodriguez swiftly placed his hand into his pocket. Deputy Gex explained this was a "human reaction to address what's in his pocket." After

---

[4] His first name was not revealed at trial.

[5] Deputy Gex identified Defendant in open court. The deputy testified that "no money was observed in the transaction," and he only saw "the cupped hand."

conducting a pat-down, the deputy discovered narcotics in Mr. Rodriguez's pocket and recovered approximately a gram of fentanyl.[6] Mr. Rodriguez was informed of his *Miranda*[7] rights and was subsequently arrested. To prevent any potential escape or violence, the deputy removed the suspected narcotics after handcuffing Mr. Rodriguez. He indicated that Mr. Rodriguez cooperated with him and responded to his questions regarding the recovered narcotics.

Furthermore, Deputy Gex pointed out in the video the gram of fentanyl and described it was encased in a clear plastic bag.[8] Based on his training and experience, he described the typical packaging of a gram and the common use of clear plastic bags in street-level transactions. Additionally, he explained that the estimated value of the bag was approximately $100. Also, the deputy identified the narcotics recovered from Mr. Rodriguez, confirming that it contained fentanyl retrieved off Mr. Rodriguez's person. He stated that the substance was subsequently sent to the crime lab for analysis.

After placing Mr. Rodriguez in the back of the police vehicle, they passed by the Magnolia Express store where the transaction occurred. Deputy Gex noticed the Chrysler was still at the location with Defendant standing outside the front of the store. He expressed surprise at this because he assumed Defendant had seen him stop Mr. Rodriquez and expected him to depart. Subsequently, the deputy stopped Defendant, called for backup, and arrested Defendant for distribution.[9] Based on the body-camera footage, approximately 20 minutes elapsed between Mr.

---

[6] The deputy described the suspected fentanyl as wrapped in a clear plastic bag commonly used for street-level sales. He explained that he was initially unaware it was fentanyl due to common narcotic mixing and that its substance and texture resembled that of heroin or fentanyl. He described the packaging typically contains a gram and commonly cost a hundred dollars.

[7] *Miranda v. Arizona*, 384 U.S. 436, 478-79, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966).

[8] The deputy testified that they conducted a field-test on the substance, and he confirmed it was conclusive for cocaine.

[9] JPSO Deputy Tyler Bellman briefly testified that on May 17, 2023, he was involved in Defendant's arrest, securing the scene, and advising defendant of his *Miranda* rights from a car.

Rodriguez's arrest, their return to the store, and Defendant's arrest.

Deputy Gex explained that upon their approach, Defendant discarded a marijuana cigarette, commonly known as a "blunt," to the ground. He testified that after searching Defendant incident to arrest, no narcotics were found on his person. Deputy Gex found a set of car keys on Defendant's person. The deputies secured the Chrysler 300 for a vehicle search warrant. Deputy Gex elaborated on how the sergeant checked the keys to confirm they were for the vehicle. Once confirmed, the sergeant unlocked the vehicle, and upon verifying they were indeed the correct keys, they proceeded to seek a search warrant for the Chrysler 300.

Deputy Gex participated in executing a search warrant on the vehicle, while documenting with photographs and activating his body-worn camera. A "ghost gun," described as a Glock-type firearm without traceable serial numbers and equipped with an extended magazine loaded with 9 mm rounds, was discovered concealed inside a knit cap on the front passenger seat. A black bag containing marijuana, which was confirmed through a lab analysis, was discovered along with a black and gray designer bag, which held four bags of narcotics and a digital scale. Additional items recovered included a second scale and a wallet with Defendant's mother's Louisiana ID in the driver-side door. Deputy Gex indicated the significance of the scales in street-level drug transactions based on his training and experience. He also identified a bag with a multi-colored, rock-like substance, initially suspected to be MDMA or Ecstasy but was later confirmed to be methamphetamines through lab results.

Following the search, Deputy Gex transported Defendant to Jefferson Parish Correctional for booking. He recalled that during the ride, Defendant inquired about his vehicle's whereabouts and mentioned giving the keys to a family member. According to the deputy, Defendant said that he is the only one with a set of keys to the vehicle, he is the only driver of the vehicle, and all the items inside

the vehicle belong to him. Footage from Deputy Gex's patrol vehicle, which was equipped with audio and video recording, was published to the jury. The deputy explained that during their conversation, he understood Defendant's remark, "everything in there for me though," as an acknowledgement of responsibility for the narcotics and gun found in the vehicle.

On the record, the State and defense counsel submitted various stipulations. Among the stipulations, they agreed that the substance found in Mr. Rodriguez's possession tested positive for fentanyl; the blunt discarded by Defendant tested positive for marijuana, amounting to 1.35 grams; the black bag found in Defendant's vehicle tested positive for marijuana, totaling 6.63 grams; the four bags found in the black and gray designer bag tested positive for fentanyl, totaling approximately 27.79 grams, and cocaine, totaling 3.19 grams; and the bag with the multi-colored substance tested positive for methamphetamine, amounting to 2.4 grams. The parties also stipulated to Defendant's previous July 2015 simple burglary and attempted burglary convictions, and the time of his 2015 pleas fell within the ten-year cleansing period of La. R.S. 14:95.1.

At the conclusion of trial, the jury found Defendant guilty as charged on counts one, two, and three. The jury also found Defendant guilty of the lesser included offenses of "possession of cocaine" on count four and "possession of methamphetamine, less than 28 grams" on count five.[10] On that same date, Defendant waived sentencing delays, and the trial judge sentenced him to 10 years on counts one, two, and three to run concurrent with each other. The judge ordered the sentence on count three to be without benefit of parole, probation, or suspension of sentence. As to the sentences on counts four and five, the judge

---

[10] Defendant's misdemeanor charge of possession of marijuana was heard simultaneously by bench trial. The trial judge found defendant guilty of that offense. The misdemeanor conviction is not before this Court in this appeal.

stated, "I'll give him two years at the Department of Corrections to run concurrent with Counts One, Two, and Three, that ten-year sentence." On August 21, 2023, Defendant filed a motion for appeal that was granted on August 24, 2023.

## ASSIGNMENTS OF ERROR

On appeal, Defendant alleges that the trial court erred in imposing excessive sentences; the trial court erred by failing to comply with the sentencing mandates of La. C.Cr.P. art. 894.1; and he was denied effective assistance of counsel.

## LAW AND ANALYSIS

Excessive Sentence and Compliance with Sentencing Mandates[11]

Defendant argues that the trial court erred by imposing excessive sentences. He states that he was convicted of two counts of distribution of fentanyl, one count of possession of a firearm by a convicted felon, one count of the lesser-included offense of possession of cocaine, and one count of the lesser-included offense of possession of methamphetamine weighing less than 28 grams. He claims he was sentenced to the maximum allowable terms of incarceration for each drug offense at the time they were committed. Defendant contends that given the circumstances of the crimes and the fact that the trial court did not order a presentence investigation report prior to imposing the sentences, there was nothing in the record to support the sentences. He further contends that the trial court did not attempt to comply with the guidelines of La. C.Cr.P. art. 894.1. He argues that there is no justification for finding that he was the worst type of offender who would warrant maximum sentences.

The State responds that the sentences were not excessive. The State argues that Defendant's criminal record and the specifics of the case justify the concurrent sentences falling within the mid to lower range, as imposed. The State also asserts

---

[11] These assignments of error are interrelated and will be discussed together.

that, since the argument regarding La. C.Cr.P. art. 894.1 was not raised below, Defendant is precluded from raising this issue on appeal.

In this matter, immediately after the jury returned its verdict, Defendant waived sentencing delays, and the trial judge sentenced him to "ten years on Counts One, Two, and Three, to run concurrent with each other." The judge ordered the sentence on count three to be without benefit of parole, probation, or suspension of sentence. As to the sentences on counts four and five, the judge stated, "I'll give him two years at the Department of Corrections to run concurrent with Counts One, Two, and Three, that ten-year sentence." The trial court did not provide reasons for imposing the sentences. The record does not reflect that Defendant objected to the sentences or filed a motion to reconsider sentence in this case.

Failure to make or file a motion to reconsider sentence, or to state the specific grounds upon which the motion is based, limits a defendant to a review of the sentence for constitutional excessiveness only. *State v. Smith*, 16-406 (La. App. 5 Cir. 8/30/17), 227 So.3d 337, 363, *writs denied*, 17-1643 (La. 9/14/18), 252 So.3d 481, and 17-1660 (La. 9/14/18), 252 So.3d 482. This Court has held that when the specific grounds for objection to the sentences, including alleged non-compliance with La. C.Cr.P. art. 894.1, are not specifically raised in the trial court, then these issues are not included in the bare review for constitutional excessiveness, and the defendant is precluded from raising these issues on appeal. *State v. Clark*, 19-518 (La. App. 5 Cir. 6/24/20), 296 So.3d 1281, 1291, *writ denied*, 21-62 (La. 3/9/21), 312 So.3d 585. Accordingly, we find that Defendant is not entitled to review of whether the trial court complied with Article 894.1 and is limited to a review of his sentences for constitutional excessiveness.[12]

_____

[12] Here, Defendant acknowledges that his attorney failed to file a motion to reconsider sentence regarding the trial court's failure to consider the guidelines set forth in La. C.Cr.P. art. 894.1 and to articulate any reasons for the sentence imposed.

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. Article I, § 20 of the Louisiana Constitution also prohibits cruel and unusual punishment but further explicitly prohibits excessive punishment. *State v. Diaz*, 20-381 (La. App. 5 Cir. 11/17/21), 331 So.3d 500, 519, *writ denied*, 21-1967 (La. 4/5/22), 335 So.3d 836. A sentence is considered excessive, even when it is within the applicable statutory range "if it makes no measurable contribution to acceptable goals of punishment and is nothing more than the purposeless imposition of pain and suffering and is grossly out of proportion to the severity of the crime." *State v. Dixon*, 17-422 (La. App. 5 Cir. 3/14/18), 241 So.3d 514, 523, *writ denied*, 18-542 (La. 2/11/19), 263 So.3d 415. In reviewing a sentence for excessiveness, the appellate court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is disproportionate as to shock the court's sense of justice. *State v. Ramirez*, 22-92 (La. App. 5 Cir. 11/2/22), 353 So.3d 902, 908; *Diaz*, 331 So.3d at 519.

A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and therefore, is given broad discretion when imposing a sentence. *Diaz*, 331 So.3d at 519-20. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. *Id*. at 520. The review of sentences under La. Const. art. 1, § 20 does not provide an appellate court with a vehicle for substituting its judgment for that of a trial judge as to what punishment is most appropriate in a given case. *State v. Corea-Calero*, 22-117 (La. App. 5 Cir. 12/28/22), 355 So.3d 697, 701.

The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4(D); *Corea-Calero*, *supra*. In reviewing a trial court's sentencing discretion, the reviewing court

should consider the nature of the crime, the nature and background of the offender, and the sentence imposed for similar crimes by the same court and other courts. However, there is no requirement that specific matters be given any particular weight at sentencing. *Diaz*, *supra*.

At the time of the charged offenses in counts one and two, the penalty provision for distribution of fentanyl, as well as for possession with intent to distribute fentanyl, provided for a term of imprisonment at hard labor for not less than five years nor more than 40 years, and in addition, a possible fine of not more than $50,000. [13] *See* La. R.S. 40:967(B)(4)(a).[14] As such, Defendant faced a sentence of five to 40 years imprisonment and a fine of $50,000 on each of his convictions on counts one and two, for which he was sentenced by the trial court to 10 years imprisonment on each count. Therefore, the imposed sentences are less than half the maximum sentence and are thus within the sentencing limits prescribed by the statute.

Additionally, Defendant was convicted of possession of a firearm by a convicted felon on count three. At the time of the charged offense in count three, the penalty provision for a violation of La. R.S. 14:95.1 carried a term of imprisonment at hard labor for "not less than five nor more than twenty years without benefit of probation, parole, or suspension of sentence" and a fine of "not less than one thousand nor more than five thousand dollars." La. R.S. 14:95.1(B).

---

[13] *See Sugasti*, *supra*.

[14] At the time of the offense, La. R.S. 40:967 provided the following in pertinent part:
(A)(1) To produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance or controlled substance analogue classified in Schedule II.
(2) To create, distribute, or possess with intent to distribute, a counterfeit controlled dangerous substance classified in Schedule II.
***
(4)(a) Fentanyl or a mixture or substance containing a detectable amount of fentanyl or its analogues, or carfentanil or a mixture or substance containing a detectable amount of carfentanil or its analogues, upon conviction for any amount, shall be imprisoned at hard labor for not less than five years nor more than forty years and, may, in addition, be required to pay a fine of not more than fifty thousand dollars.

Defendant was exposed to a sentencing range of five years to 20 years, and the trial court sentenced him to 10 years imprisonment without benefit of probation, parole, or suspension of sentence.

At the time of the charged offenses in counts four and five, the penalty provision for possession of cocaine and possession of methamphetamine was governed by La. R.S. 40:967, which provided in pertinent part, "An aggregate weight of two grams or more but less than twenty-eight grams shall be imprisoned at hard labor, for not more than one year nor more than five years and, in addition, may be fined not more than five thousand dollars." *See* La. R.S. 40:967(C)(2). As such, Defendant faced a sentence of one to five years imprisonment and a fine of $50,000 on each of his convictions on counts four and five, for which he was sentenced by the trial court to two years imprisonment on each count. Therefore, Defendant's imposed sentences were half of the maximum sentences and within the sentencing limits prescribed by the statute.

As to the nature of the crimes, as well as the nature and background of the offender, the evidence at trial showed that Defendant was apprehended at Magnolia Express Discount after a narcotics transaction was witnessed by Deputy Gex, who was familiar with the area. The deputy observed Defendant conduct the transaction with Mr. Rodriguez, leading to Mr. Rodriguez's arrest and the seizure of fentanyl. The deputy later arrested Defendant for distribution after observing him still at the scene. The keys to the vehicle were located on Defendant's person, and a search of the vehicle revealed a "ghost gun," marijuana, and a designer-style bag holding four bags of fentanyl and a digital scale. After conducting the vehicle search, the deputy transported Defendant to booking. Deputy Gex reported that Defendant claimed sole ownership of the vehicle's contents and asserted that he is the only person who drives the vehicle. Further, we consider the parties' stipulations and the analysis report, which revealed a variety of narcotics in this

case. Among the findings were: a sealed plastic bag with a clear plastic bag containing fentanyl (0.78 grams); another sealed plastic bag with clear plastic bags containing fentanyl (27.79 grams) and cocaine (3.19 grams); a sealed plastic bag with a clear plastic bag containing methamphetamine (2.41 grams); and a bag with marijuana (6.63 grams). During the deputy's testimony, he described the typical packaging of a gram and the common use of clear plastic bags in street-level transactions. The deputy also emphasized the significance of scales in street-level drug transactions, and a digital scale was discovered inside the vehicle.

We take into account that the deputy observed Defendant involved in a hand-to-hand transaction with Mr. Rodriguez. Subsequently, the deputy made the concerning discovery that Defendant possessed a loaded "ghost gun" and various narcotics, including fentanyl, in close proximity to a store. "The Centers of Disease Control and Prevention (CDC) labels fentanyl as the deadliest drug in the country, serving as the cause of most drug overdoses, with approximately three hundred deaths per day." *State v. Harville*, 23-413 (La. App. 3 Cir. 11/29/23), 374 So.3d 1139, 1146.[15] Additionally, the record reflects that Defendant has a criminal history, as evidenced by the stipulations that on July 14, 2015, he was convicted of two counts of simple burglary and attempted simple robbery in case numbers 15-342 and 13-5030.

The third factor requires consideration of sentences imposed for similar crimes by this Court and other courts. "Although a comparison of sentences imposed for similar crimes may provide guidance, '[i]t is well settled that

---

[15] *See also United States v. Holley*, CR 21-00791 (SDW), 2022 WL 683032 (D.N.J. Mar. 8, 2022), which stated:

> To begin with, the nature and circumstances of the offense with which Defendant is charged are serious, particularly considering the allegation involves conspiracy to distribute fentanyl—a drug the Centers for Disease Control "CDC") confirms is "is 50 to 100 times more potent than morphine," and for which the "CDC issued a Health Alert Network Advisory to medical and public health professionals, first responders, harm reduction organizations, and other community partners" warning of the dangers posed by the drug.

sentences must be individualized to the particular offender and to the particular offense committed.'" *State v. Boudreaux*, 11-1345 (La. App. 4 Cir. 7/25/12), 98 So.3d 881, 891, *writ denied*, 12-1907 (La. 11/9/12), 100 So.3d 841. While comparisons to other similar cases are useful in itself and sets the stage, the focus of sentence review remains on the character and propensities of the offender and the circumstances of the offense. *State v. LeBlanc*, 09-1355 (La. 7/6/10), 41 So.3d 1168, 1173.

In *State v. Grant*, 55,592 (La. App. 2 Cir. 4/10/24), 384 So.3d 1159, the defendant was convicted of five counts, including charges arising from possession with intent to distribute drugs and possession of a firearm or carrying a concealed weapon by a convicted felon, and he was sentenced to the maximum sentences on each of his five counts. On remand, the trial court resentenced the defendant to the same maximum sentences on each of his five counts. Specifically, he was sentenced by the trial court to 10 years imprisonment at hard labor for the possession with the intent to distribute Schedule II CDS, less than 28 grams of methamphetamine; 10 years imprisonment at hard labor without the possibility of probation, parole, or suspension of sentence for illegal carrying of weapons while in possession of CDS; 20 years at hard labor without benefit of probation, parole, or suspension of sentence for the possession of a firearm or carrying a concealed weapon by a convicted felon; two years at hard labor for possession of Schedule II CDS, less than two grams cocaine; and 15 days in the parish prison jail for possession of synthetic marijuana. *Id*. at 1161. The appellate court indicated that the record revealed the trial court was aware that the defendant had a long and continued history of criminal activity and convictions. His prior arrests and convictions included, but were not limited to, armed robbery, aggravated battery, distribution of marijuana, possession of cocaine, possession of a firearm by a convicted felon, and domestic abuse battery. The appellate court ultimately held

that the defendant's assignment of error as to the excessiveness of his sentences to be without merit and affirmed each of his sentences. *Id.* at 1164.[16]

Additionally, Defendant argues that the trial court erred in not ordering a presentence investigation report ("PSI"). La. C.Cr.P. art. 875(A)(1) provides, in relevant part, that "[i]f a defendant is convicted of a felony offense...the court may order the Department of Public Safety and Corrections, division of probation and parole, to make a presentence investigation." The use of the word "may" in this article reflects that ordering a presentence investigation is discretionary with the trial court. *State v. Jones*, 11-87 (La. App. 5 Cir. 12/13/11), 81 So.3d 835, 840. The Louisiana Supreme Court has also pointed out that a PSI is an aid to the court, not a right of the defendant, and the court is not required to order that the report be prepared. *Id.* (citing *State v. Bell*, 377 So.2d 275 (La. 1979)). Furthermore, in the instant case, no objection to the lack of a PSI was made at the sentencing hearing. Accordingly, we find that the trial court did not abuse its discretion in not ordering a presentence investigation report. (*See State v. Woods*, 20-73 (La. App. 5 Cir. 9/9/20), 303 So.3d 403, 410, *writ denied*, 21-27 (La. 2/17/21), 310 So.3d 1150, where this Court found that the ordering of a PSI was discretionary, that no objection was made to the lack of a PSI, and therefore, the trial court did not abuse its discretion in not ordering one).

As demonstrated above, and in contradiction to Defendant's assertions, he did not receive the maximum sentences available for counts one, two, three, four, or five. Rather, the sentences on all of the counts fall below the maximum

---

[16] We also consider the following sentences for convictions of possession of a firearm by a convicted felon. *See, e.g., State v. Latique*, 18-622 (La. App. 3 Cir. 2/20/19), 265 So.3d 93, *writ denied,* 19-707 (La. 10/8/19), 280 So.3d 593 (affirmed a 10-year sentence at hard labor without benefit of probation, parole, or suspension of sentence); *State v. Johnson*, 09-862 (La. App. 3 Cir. 2/3/10), 28 So.3d 1263 (upheld a 10-year sentence); *State v. Felder,* 36,228 (La. App. 2 Cir. 8/14/02), 823 So.2d 1107 (affirmed twelve-year sentence); *State v. Jones,* 01-539 (La. App. 3 Cir. 10/31/01), 799 So.2d 772, *writ denied,* 01-3310 (La. 12/13/02), 831 So.2d 975 (upheld a 15-year sentence, plus $1,000 fine); *State v. Rodriguez,* 00-1521 (La. App. 4 Cir. 3/14/01), 786 So.2d 122 (upheld 10-year sentence). In the instant case, Defendant received a 10-year sentence for possession of a firearm by a convicted felon.

sentences for his crimes and were ordered to run concurrently. Under the circumstances in this case, particularly Defendant's involvement in the distribution of various narcotics and his criminal history, we find that the 10-year sentences imposed counts one, two, and three and the two-year sentences on counts four and five are not unconstitutionally excessive.

Ineffective Assistance of Counsel

At the lower court, defense counsel did not verbally object to the sentences nor did he file a motion to reconsider sentence. On appeal, Defendant argues that his counsel was ineffective for failing to file such a motion. He claims he was denied effective assistance of counsel as a result of his counsel's failure to file a motion to reconsider sentence to preserve for review his right to object on specific grounds to the excessiveness of his sentences. Specifically, he contends that his defense counsel should have objected to the imposition of maximum terms of imprisonment and the court's non-compliance with provisions outlined in La. C.Cr.P. art. 894.1. In response, the State disputes the defense's assertion of ineffective counsel regarding the failure to file a motion to reconsider sentence. The State maintains that the record supports the sentences, and Defendant has not demonstrated that lower sentences would have been imposed had such a motion been filed.

A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution of 1974. *State v. Gatson*, 21-156 (La. App. 5 Cir. 12/29/21), 334 So.3d 1021, 1034, 1039. To prove ineffective assistance of counsel, a defendant must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *State ex rel. Stevenson v. Hooper*, No. 21-KH-692, 2022 WL 189730 (La. App. 5 Cir. Jan. 20, 2022), *writ denied*, 22-370 (La. 5/24/22), 338 So.3d 1193. Under the *Strickland* test, the defendant must

show: (1) that counsel's performance was deficient, that is, that the performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) that the deficient performance prejudiced the defense. *Fisher v. State*, No. 21-KH-718, 2022 WL 98173 (La. App. 5 Cir. Jan. 10, 2022), *writ denied*, 22-246 (La. 2/7/23), 354 So.3d 671. An error is considered prejudicial if it was so serious as to deprive the defendant of a fair trial, or "a trial whose result is reliable." *Id*. To prove prejudice, the defendant must demonstrate that, but for counsel's unprofessional conduct, the outcome of the trial would have been different. *State v. Robinson*, 23-277 (La. App. 5 Cir. 6/28/23), 368 So.3d 737, 742, *writ denied*, 23-1042 (La. 12/5/23), 373 So.3d 979.

Generally, a claim of ineffective assistance of counsel is most appropriately addressed through an application for post-conviction relief, rather than on direct appeal, so as to afford the parties an adequate record for review. *State v. Robertson*, 08-297 (La. App. 5 Cir. 10/28/08), 995 So.2d 650, 659, *writ denied*, 08-2962 (La. 10/9/09), 18 So.3d 1279. However, when the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised by an assignment of error on appeal, it may be addressed in the interest of judicial economy. *State v. Grimes*, 09-2 (La. App. 5 Cir. 5/26/09), 16 So.3d 418, 426, *writ denied*, 09-1517 (La. 3/12/10), 28 So.3d 1023. Given the nature of this particular claim regarding Defendant's sentences, we find the appellate record contains sufficient evidence for this Court to address on direct review the merits of the ineffective assistance of counsel claim made by Defendant herein. This Court routinely reviews sentences for unconstitutional excessiveness, even in the absence of a defendant's timely objection or the filing of a motion to reconsider sentence. *State v. Taylor*, 18-126 (La. App. 5 Cir. 10/17/18), 258 So.3d 217, 228, *writ denied*, 18-1914 (La. 5/20/19), 271 So.3d 200. Therefore, we find that trial counsel's failure, in this case, to object on certain grounds or to file a motion to

reconsider sentence did not prejudice Defendant by denying him such review. *See Taylor, supra*; *State v. Lewis*, 09-783 (La. App. 5 Cir. 5/28/10), 43 So.3d 973, 989.

Although the grounds asserted on appeal for challenging Defendant's sentences are not preserved, we will consider his specific objections to the sentence in order to properly assess his claim of ineffectiveness of counsel. As previously discussed, Defendant points out on appeal that the trial court did not order a PSI, and he also argues that there is no justification for finding that he was the worst type of offender who would warrant maximum sentences. Defendant further argues that the failure to file a motion to reconsider sentences precluded him from challenging the trial judge's failure to articulate a basis for the sentence imposed under La. C.Cr.P. art. 894.1. *See State v. King*, 00-1434 (La. App. 5 Cir. 5/16/01), 788 So.2d 589, 593, *writ denied*, 01-2456 (La. 9/20/02), 825 So.2d 1157 (where this Court considered the defendant's unpreserved argument that the trial court failed to articulate reasons for his sentence under La. C.Cr.P. art. 894.1 in order to assess his claim of ineffective assistance of counsel).

The mere failure to file a motion to reconsider sentence does not in and of itself constitute ineffective assistance of counsel. *State v. Fairley*, 02-168 (La. App. 5 Cir. 6/26/02), 822 So.2d 812, 816. A defendant must also "show a reasonable probability that, but for counsel's error, his sentence would have been different." *Id.*

Before proceeding further, we initially consider that the trial court did not err in not ordering a PSI. A PSI is an aid to the trial court, and it is not a defendant's right. Rather, the question of whether a PSI is ordered is discretionary on the part of the trial court. La. C.Cr.P. art. 875. *See Jones*, *supra*.

Furthermore, Defendant's claim regarding the trial court sentencing him to maximum terms for his offenses is inaccurate. As to counts one and two, Defendant faced a sentence of five to 40 years imprisonment and a fine of $50,000

on his convictions, for which he was sentenced by the trial court to 10 years imprisonment on each count. As to count three, he was exposed to a sentencing range of five to 25 years, and the trial court sentenced him to 10 years imprisonment without benefit of probation, parole, or suspension of sentence. As to counts four and five, Defendant faced a sentence of one to five years imprisonment and a fine of $50,000 on each of his convictions, for which he was sentenced by the trial court to two years imprisonment on each count. Therefore, the sentences imposed on counts one, two, three, four, and five fall below the maximum penalties prescribed by the statutes.[17]

Lastly, Defendant contends that his trial attorney was ineffective by failing to properly preserve his claim for review that the judge failed to state reasons for sentencing Defendant, as required by La. C.Cr.P. art. 894.1. La. C.Cr.P. art. 894.1(A) provides that when a defendant has been convicted of a felony or misdemeanor, the court should impose a sentence of imprisonment if any of the three specified factors are met. La. C.Cr.P. art. 894.1(B) lists suggested considerations for the court when determining if a sentence should be suspended or if probation should be imposed. La. C.Cr.P. art. 894.1(C) states, "The court shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence."

Here, the record does not reflect that the trial court stated reasons for the sentences on the record. Recently, in a similar case, *State v. Acevedo*, 22-124 (La. App. 5 Cir. 12/28/22), 356 So.3d 1137, 1146, *writ denied*, 23-112 (La. 11/15/23), 373 So.3d 76, this Court found that the trial court did not articulate any reasons for imposing a twenty-year sentence and did not reference the sentencing guidelines set forth in La. C.Cr.P. art. 894.1. The defendant in *Acevedo* alleged that the trial

---

[17] As previously mentioned, the court's failure to impose the mandatory fine on count three renders the sentence illegally lenient. In addition, the court failed to state the sentences would be served at hard labor on counts one, two, and three.

court's 20-year sentence for possession of over 400 grams of cocaine was excessive because the trial court failed to consider La. C.Cr.P. art. 894.1 and failed to articulate reasons for the sentence imposed. This Court stated:

> Where the record clearly shows an adequate factual basis for the sentence imposed, remand for resentencing is unnecessary even where there has not been full compliance with Article 894.1. *State v. Garrison*, 15-285 (La. App. 5 Cir. 12/23/15), 184 So.3d 164, 171, *writ denied*, 16-258 (La. 2/10/17), 215 So.3d 700. In addition, a remand for more complete compliance with La. C.Cr.P. art. 894.1 is not required when the sentence imposed is not "apparently severe." *State v. Chess*, 00-163 (La. App. 5 Cir. 6/27/00), 762 So.2d 1279, 1283.
>
> In the present case, we acknowledge that the trial court did not articulate any reasons for imposing the twenty-year sentence, nor did it reference the sentencing guidelines set forth in La. C.Cr.P. art. 894.1. However, under the particular facts of this case, we find that a remand to the trial court for resentencing is not warranted because the record supports the sentence imposed, and the sentence is not apparently severe.

*Acevedo*, *supra*.

In *Acevedo*, this Court specifically noted that the State produced evidence to show that the defendant was in possession of a large amount of cocaine and further witness testimony supported the conviction. This Court cited to the first circuit's decision in *State v. Honea*, 18-18 (La. App. 1 Cir. 12/21/18), 268 So.3d 1117, 1120, *writ not considered*, 19-598 (La. 8/12/19), 279 So.3d 915, where the appellate court stated, "Even when a trial court assigns no reasons, the sentence will be set aside on appeal and remanded for resentencing only if the record is either inadequate or clearly indicates that the sentence is excessive." *Acevedo*, 356 So.3d at 1146 n.6.

In the present case, we acknowledge that the trial court did not articulate any reasons for imposing the sentence or reference the sentencing guidelines set forth in La. C.Cr.P. art. 894.1. However, under the particular facts of this case, the record contains a factual basis for the sentence imposed. The judge presided over the entire trial and heard all evidence. Notably, fentanyl was found in the

Defendant's vehicle, he was observed in a hand-to-hand transaction with Mr. Rodriguez, who was later found with fentanyl, and the deputy's testimony and the evidence suggested street-level drug transactions. Furthermore, Defendant, a person with a history of prior convictions, was discovered in possession of both a loaded weapon and multiple drugs inside a vehicle to which he asserted ownership. As such, we find that there is an adequate factual basis for the sentences contained in the record. Accordingly, we conclude that remand is not required for the trial judge to articulate factors upon which he relied in sentencing Defendant. *See Acevedo*, *supra* (quoting *Honea*, *supra*).

Based on the foregoing, we find that Defendant has not demonstrated he received ineffective assistance of counsel. Consistent with this Court's prior decisions, Defendant's excessiveness claim has been addressed, even in the absence of a motion to reconsider sentence. Defendant has not demonstrated that counsel was deficient for failing to object at the time of sentencing or to file a motion to reconsider and that he was prejudiced by counsel's failure to object or in failing to file such a motion. In any case, the sentences imposed on counts one, two, three, four, and five are supported by the record. As such, we find that under *Strickland*, *supra*, Defendant has failed to show that his counsel's performance was deficient and that he was prejudiced.

Errors Patent Review

The record was reviewed for errors patent according to La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5th Cir. 1990). No errors requiring action were revealed.

**DECREE**

For the foregoing reasons, we affirm Defendant's convictions and sentences.

**AFFIRMED**

STATE OF LOUISIANA                    NO. 23-KA-525

VERSUS                                FIFTH CIRCUIT

ODELL LEE ROBERTSON                   COURT OF APPEAL

                                      STATE OF LOUISIANA

**SCHLEGEL, J., CONCURS WITH REASONS**

I agree with the majority opinion. But I write separately to admonish Appellant's counsel and to remind him of his professional responsibilities.

Specifically, counsel argued that the trial court's sentence was excessive, alleging that "Mr. Robertson was sentenced to the maximum terms of incarceration allowed by law at the time of the commission of the drug offenses for each of those offenses." But as noted in this Court's opinion, the sentencing range at the time of the charged offenses for counts 1 (distribution of fentanyl) and 2 (possession with intent to distribute fentanyl) was not less than 5 years nor more than 40 years at hard labor. Defendant received a 10-year sentence at hard labor on Counts 1 and 2 to run concurrent with one another and all other counts. The sentences imposed fall well below the maximum sentences Defendant could have received. In this matter, counsel should be more careful when reviewing the record and the law so as not to misrepresent the potential sentencing ranges.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **OCTOBER 23, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 23-KA-525

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE FRANK A. BRINDISI (DISTRICT JUDGE)
JULIET L. CLARK (APPELLEE)          THOMAS J. BUTLER (APPELLEE)          GWENDOLYN K. BROWN (APPELLANT)

**MAILED**
HONORABLE PAUL D. CONNICK, JR.
(APPELLEE)
DISTRICT ATTORNEY
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053